(C. D. 925)

JULIUS KAYSER & Co. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 22, 1945)

*John R. Rafter* (*Edward P. Sharretts*, associate counsel), for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Arthur R. Martoccia* and *Joseph E. Weil*, special attorneys), for the defendant.

Before TILSON and KINCHELOE, Judges; LAWRENCE, J., not participating

KINCHELOE, Judge: This suit is for the recovery of certain customs duty alleged to have been improperly assessed on an importation of cotton gloves from Germany. The collector of customs at New York classified the merchandise as gloves, wholly or in chief value of cotton or other vegetable fiber, made of fabric knit on a warp-knitting machine, and assessed duty thereon at 60 per centum ad valorem under paragraph 915 of the Tariff Act of 1930, plus an additional duty of 10 cents per pound on the cotton contained therein having a staple of one and one-eighth inches or more in length under paragraph 924. The plaintiff does not protest the payment of the additional duty under said paragraph 924, but does claim, among other things, that the imported merchandise is dutiable at only 50 per centum ad valorem under said paragraph 915 as cotton gloves "made of fabric knit on other than a warp-knitting machine."

Upon the trial all other claims in the protest were abandoned, and the plaintiff company further limited its protest to the 200 dozen gloves in case No. 21140 covered by entry 744925, and described on the invoice of Friedrich Traufelder, Burgstaedt (Saxony), October 17, 1932, as "Children's simplex cotton slip on Gloves, with spear point, kip seam, usual thumb, scalloped, under 11 inches long" (R. p. 2).

The provisions of paragraph 915 are quoted in full, as follows:

PAR. 915. Gloves and mittens, finished or unfinished, wholly or in chief value of cotton or other vegetable fiber: Made of fabric knit on a warp-knitting machine, 60 per centum ad valorem; made of fabric knit on other than a warp-knitting machine, 50 per centum ad valorem; made of woven fabric, 25 per centum ad valorem.

Plaintiff in its brief (p. 17) argues that the phrase "other than a warp-knitting machine," which appears in the second bracket of paragraph 915, means "different from a warp-knitting machine," and

that it includes a machine which performs some important function in addition to warp knitting as well as a machine which does no warp knitting. Plaintiff contends further that warp knitting is a method of machine knitting, and, therefore, that a warp-knittting machine is a machine which employs that method of knitting.

The contention of the defendant, on the other hand, is that any knitting machine which is supplied with threads from a "warp-beam" (a roller on which a number of threads are wound parallel to one another and are then known as "warp threads" or a "warp") is a warp-knitting machine.

Plaintiff in its brief also contends herein (pp. 20, 21) that:

1. The fabric of which the gloves in question are made was knit on the Simplex knitting machine.

2. A warp-knitting machine is a machine which knits threads *lengthwise* of the *fabric* which it produces, i. e., so that the needle-loops which are successively made from each thread are in successively higher courses throughout the length of the fabric and the sinker-loops which are successively made from each thread run from the lowest course of needle-loops to successively higher courses throughout the length of the fabric.

3. The Simplex knitting machine is substantially different from a warp-knitting machine in respect of its method of knitting.

4. The Simplex knitting machine is substantially different from a warp-knitting machine in respect of its construction and operation.

5. The Simplex knitting machine was designed and constructed to make a double fabric with the same appearance on both sides, by knitting and interknitting back to back two layers of fabric. The *interknitting* function of that machine is its most distinctive feature and is the primary reason for which it was created.

6. The fabric produced on the Simplex knitting machine is substantially different from warp-knit fabric.

7. The fact that the Simplex knitting machine is supplied with threads from "warp-beams" does not make it a warp-knitting machine.

On the first point, we think the testimony on both sides is in agreement that the fabric of which the gloves in question were made was knit on the Simplex knitting machine. The sole issue in the case is therefore simply whether this so-called Simplex knitting machine is a "warp-knitting machine" or "other than a warp-knitting machine" within the meaning of said paragraph 915 of the tariff act.

Twenty-eight witnesses have testified herein, 10 for the plaintiff and 19 for the defendant, which includes one of plaintiff's witnesses who was also called by the defendant. All of them seem to have been associated with machine knitting in one or more of its branches. They came from many localities, and represented various phases of the industry. Their various experiences included the building, installation, maintenance, and operation of knitting machines, the selling of such machines and their products, the invention of new types and parts of knitting machines, and instruction in machine knitting.

The plaintiff called as its first witness Charles R. Kovar for the purpose of introducing in evidence various exhibits. He stated that

he has been employed by the plaintiff company (Julius Kayser & Co.) for about 26 years in various capacities; that the company manufactures hosiery and underwear and sells to the retail trade, and imports cotton fabric gloves; that the company has a factory in Brooklyn, N. Y., and an office in New York City; that from 1930 to the present time he was European buyer for the company, and stylist and creator of its glove line; and that all the orders were placed by him, including the merchandise in question. This witness produced a glove which he stated was truly representative of the gloves here in issue with respect to the fabric and its construction, as well as other features of the gloves, which was marked in evidence as exhibit 1. The witness further testified that the sample glove did not come out of the instant importation, but came in a short time afterwards in 1932 or the beginning of 1933.

Upon recall by the plaintiff the same witness testified further that exhibit 1 was made from a well-known fabric for gloves, and that it is a double woven or Simplex cloth, and so referred to by the trade and themselves; that he has seen the cloth made in Germany, Czechoslovakia, Poland, Belgium, and the United States; that there is a difference between the fabric as it appears in exhibit 1 and its condition as it comes off the knitting machine; that the fabric in the glove has been dressed and sueded, or finished or sueded; that finishing means dyeing; and that suedeing is a process that scrapes the top of the fabric so that it has a rough or suede appearance, like suede leather. The witness then identified illustrative exhibit A as the same kind of fabric in the unfinished or undyed, undressed, and unsueded condition, as it comes from the knitting machine. The witness further identified illustrative exhibit B as made from Atlas cloth, and stated that he has known and handled that kind of fabric since 1927; that it is a well-known fabric in common use in the glove trade in this country; that illustrative exhibit B was imported from Germany by Julius Kayser & Co., the plaintiff company, as one of their gloves, and that it is thinner and coarser than exhibit 1. He thought the Simplex cloth was developed around 1925 to 1927, and that prior thereto the only cloth in existence for gloves was the Atlas cloth or the pasted cloth known as the duplex cloth; that the Atlas cloth has one appearance on one side and another appearance on the other; but that the Simplex cloth has the same appearance on both sides. The witness stated that the pair of gloves, illustrative exhibit C, represented the duplex fabric or two Atlas fabrics pasted together as one, and the Julius Kayser & Co. imported all of the types of gloves up to 1938, but that since then the company has been making the fabric for the gloves here, including the Simplex fabric and the Atlas fabric, which they began manufacturing in this country in 1937; that when he saw the Simplex fabric made abroad it was always made on the same kind of a machine, and that the principal makers of

the Simplex machine are Saupe, Wirth, Schneider & Reuthner, and Schubert & Salzer; that the said Simplex cloth is double-knitted cloth, even though it is called double-woven cloth; that the same type of Simplex machine is made in this country by Alfred Hoffman, Inc., and that he has seen the Hoffman machine in the Kayser factory at Walton, N. Y.; that the Kayser company named their Simplex fabric gloves "Doubletex" and "Leatherette," and that they use the latter term today; that they sold gloves like illustrative exhibit B under the trade name of "Chamoisette," and that the Kayser trade name for exhibit C was "Duplex." The witness stated further that he knows of weft machines and that they operate differently from a warp-knitting machine. He described the manufacture of the fabric in exhibit 1 as follows:

This double-woven or Simplex cloth was made on a machine that had two operating sides. On each side there was a needle bar, a presser bar, a sinker bar, and the needle bars, two needle bars, thread bars.

X Q. On each side?

A. Yes, sir. Then these two operating sides operated so that the sinker bars and the needle bars, and all those things, came together, and they knitted two cloths into one, as appearing that it was interwoven together.

X Q. I see.

Judge KINCHELOE: They did that simultaneously, in one operation?

A. Not at the exact second. After all, one bar moves, and then another comes over—but two operating sides, definitely distinct from one another.

Q. Making Simplex?

A. Yes; whereas Atlas only had one side.

By Mr. WEIL:

X Q. In other words, this [Simplex machine] employed a second warp beam?

A. No.

X Q. Or a second warp bar?

A. To me, another operation.

\*　　\*　　\*　　\*　　\*　　\*　　\*

X Q. This did employ two needle bars, two presser bars, two sinker bars, and two thread bars, as compared to the machine which produced Atlas cloth and had one of each of these bars?

A. Except thread bars.

X Q. Both had two thread bars?

A. Right.

\*　　\*　　\*　　\*　　\*　　\*　　\*

X Q. With the two needle bars, two presser bars, and two sinker bars, did they work on the same machine or a different machine?

A. Different machine? The same compact machine, with two operating sides (R. 40, 41.).

Plaintiff's witness, Carl E. Weinberg, secretary of Alfred Hoffman, Inc., West New York, N. J., testified that his company makes knitting machines, including the Simplex knitting machine, and that he supervises their manufacture; that he has known the Simplex knitting machine since 1923 and is familiar with it; that he believes it originated

in Germany, where he gained his first knowledge of it; that there are several makes of that machine, and that he has seen all of them; that they are all essentially the same so far as the "stitch forming elements" are concerned; that they all employ two needle bars, two guide bars, two sinker bars, and two presser bars; and that, whatever variations might exist between one make of the Simplex machine and another make, would not affect the method of knitting (R. pp. 42–45). This witness also stated that the Simplex knitting machine has been in common use in the glove manufacturing trade of Germany for many years, possibly since 1923, and certainly since 1930; that his company began to manufacture that kind of knitting machine in 1939; and that his company is the only manufacturer thereof in the United States (R. pp. 43, 45).

Plaintiff's next witness, Frank A. Bell, foreman of Julius Kayser & Co.'s knitting plant at Walton, N. Y., since 1922, testified that he supervises the knitting on the Simplex machines at that plant; that he has been acquainted with the Simplex knitting machine since 1937; and that he is familiar with its construction and operation (R. pp. 55, 57). Also, that he is familiar with the fabric produced on the Simplex knitting machine, and that he has made and supervised the making of that fabric since 1937. He identified as Simplex cotton glove fabric the undyed and unsueded piece of fabric admitted in evidence as illustrative exhibit A; that his company has 22 Simplex knitting machines in the factory at Walton, some of which are of American make and some of German; that he is acquainted with their construction and appearance; that there is no fundamental difference between them, whether they be German or American; that they are all basically the same; that they operate in the same way; and that their method of knitting is the same (R. 63, 64). When asked to examine the fabric in exhibit 1, he stated that he was acquainted with that kind of fabric for 4 years and has supervised the making of it, and that it is Simplex cotton fabric made on a Simplex machine. He further testified that exhibit 1 and illustrative exhibit A are both the same fabric and construction made on a Simplex machine, except that illustrative exhibit A is in the gray, just as it comes from the machine, while exhibit 1 has been dyed and dressed and sueded, giving it a different appearance.

Harry Searles was the next witness for the plaintiff. He testified that he is manager of the Van Raalte Co. plant at Saratoga Springs, N. Y., and that he has had 31 years' experience in making machine-knit glove fabrics; that he has been acquainted with three different makes of the Simplex knitting machine for about 8 years; that they all knit the same way; that the Simplex machine is a well-known type of machine in the glove manufacturing industry, and that he first heard of it in 1922. He identified illustrative exhibit A as Simplex fabric,

as also the fabric of which exhibit 1 is made, except that illustrative exhibit A is in the gray, whereas exhibit 1 has been dyed and finished (sueded), but that the construction of both is the same (R. pp. 104–112).

Plaintiff's next witness, Edmund K. Flynn, was a microscopist and photographer for the United States Testing Co., at Hoboken, N. J. He testified that he had examined under a microscope and had made photomicrographs of the fabrics in various exhibits in this case, including illustrative exhibit A and a piece of fabric from exhibit 1. His photomicrographs of such fabrics included cross-sectional views thereof, both coursewise, i. e., in the direction from selvage to selvage, and walewise, i. e., lengthwise of the fabric, magnified 24 times their actual size. The photomicrographs of the cross sections of the fabric in illustrative exhibit A are marked illustrative exhibits R–1 to R–6, and the photomicrographs of the cross sections of the fabric in exhibit 1 are marked illustrative exhibits W–1 and W–2. He stated that both samples of the fabric were identical in construction, because both contain those cross threads, and are of the same construction on both sides of the fabric (R. pp. 127–145).

According to the defendant's evidence on the issue herein, it is shown that the Simplex knitting machine is sometimes called a "double-tricot" machine; that the kind of fabric made thereon is readily recognizable as Simplex fabric; and that the fabrics in exhibit 1 and illustrative exhibit A are Simplex fabrics made on the Simplex knitting machine.

It is quite clear from the evidence that there are different methods of machine knitting, and that the two principal methods of machine knitting are "warp-knitting" and "weft-knitting." The theory of the plaintiff is that in warp knitting the threads are knit and run lengthwise of the fabric which is being produced, and that a warp-knitting machine is one which employs that method of knitting.

In this connection plaintiff's witness Weinberg testified:

The best definition of warp knitting that I can give is that the warp-knitting machine knits a fabric on one needle bar in a longitudinal direction * * *. (R. p. 49.)

Plaintiff's witness Bell testified:

Warp knitting is done with a group of threads forming loops on a horizontal row of needles directly above a preceding row of loops, said loops running lengthwise through the fabric.

Q. What do you mean by lengthwise?

A. I mean not from selvage to selvage but lengthwise, as the cloth is knitted; one row of loops is formed directly above the other. That continues. The thread itself may not run lengthwise, may zig-zag a little, but the loops are always in the next plane above.

Q. Let's see if I understand you: You mean by that that the knitting is done in the same direction that the fabric is being produced?

A. Yes, sir (R. pp. 88, 89).

Plaintiff's witness Searles gave his understanding of the term "warp-knitting" as follows:

Well, applying a warp into a machine, forming loops, following a preceding stitch and forming a subsequent stitch, these stitches being in a longitudinal direction.

The testimony of plaintiff's witness, Otto Holzhey, as to warp knitting is to the like effect (R. pp. 147–189).

The testimony of plaintiff's witness, Sidney Worms, was in part as follows:

Warp-knitting consists of the use of an elongated bobbin, or beam, which contains thereon threads. These threads are drawn into a knitting machine through eyelet needles, or guide needles, which are attached by leads to guide bars, or eyelet bars. The expression is "Lochnadeln," which is eyelet bars. It is then drawn into the machine and attached to a roller, and the knitting proceeds. The first course in such a machine—a thread is drawn through as a retaining thread, which is held down on either side of the machine, and your first loops are constructed.

\* \* \* \* \* \* \*

Q. You are speaking now about the position of the threads?

A. Right; at the start of the first course. Courses are then produced in a lengthwise or vertical direction to the floor of the machine, usually called in textile books "longitudinal" (R. p. 193).

Plaintiff's witness, Joseph L. Beers, testified:

A warp-knitting machine produces—you asked me the functions. A warp-knitting machine knits on a single needle bar, feeding a multiplicity of threads to a unitary or single needle bar and forming these threads into a series of connected loops, running lengthwise, that is generally lengthwise in the fabric, as they may zig-zag or take an oblique course, depending upon the pattern to be created, whereas in the Simplex knitting machine an entirely different action occurs (R. pp. 208, 209).

\* \* \* \* \* \* \*

Q. Is there any difference between warp-knitting and knitting done on the Simplex machine, in respect of continuity?

A. Yes, sir; there is a decided difference.

Q. What is it?

A. In warp-knitting, that is, knitting on one needle bar, the threads are fed to needles and are formed into loops, and the needles are immediately, at the completion of that and as they arise, fed a new lap of yarn or new group of threads to perform this in a succeeding operation without any interruption, that is, adjoining courses. By that I mean the courses which directly follow one another and are directly above one another are formed without any interruption of the warp-knitting cycle (R. p. 211).

The testimony of defendant's witnesses also shows that the direction of the knitting on a warp-knitting machine is lengthwise or in a general vertical direction in which the fabric is produced. In other words, the lengthwise diagonal line followed by the knitting and the threads may be short (R. pp. 346, 389) or long (R. pp. 149, 346, 380, 389), according to the pattern of the fabric desired (R. pp. 209, 215,

346); but, having proceeded lengthwise in one diagonal direction for a given number of courses, they will continue to proceed lengthwise in the other diagonal direction (R. 305, 323, 389), for an equal number of courses, thereby following a lengthwise zigzag line from one end of the fabric to the other end. The defendant, however, claims that the determining feature of a warp-knitting machine is not only the lengthwise direction of the knitting, but that the threads must come from warp beams, which will be later referred to.

On plaintiff's third point that the Simplex knitting machine is substantially different from a warp-knitting machine in respect of its method of knitting, plaintiff refers to the testimony of its witness Flynn, the microscopist and photographer, who made the before-mentioned photographic exhibits and who also made a microscopic examination of the fabrics the subject thereof, as follows:

Q. What did you actually observe as to the construction of the fabric we are now talking about, which is illustrative Exhibit A? Tell me what you observed as to that fabric under the microscope, as well as the pictures.

\* \* \* \* \* \* \*

A. In the microscopic examination made in the cross-section of this fabric there is a cross-threading, or a cross-thread, going from one side of the fabric to the other, that is, going through the fabric in depth, forming a loop on one side, then reversing and going back and forming a loop on the other side, making the fabric identical on both sides, giving both sides the same appearance.

Q. When you say you observed these cross-threads going in depth from one to the other side, do you mean from one face to the other face?

A. That is right; in depth, through from one face to the other face.

Q. What did you observe as to the appearance of the faces?

A. No difference at all. As far as my microscopic examination was concerned I saw no difference at all in both sides of the fabric.

Q. That applies to Illustrative Exhibit A, does it?

A. That is right. It does.

The witness stated that he found the same thing with reference to the fabric which came from exhibit 1, and that illustrative exhibit A and exhibit 1 are identical in construction, but that he did not find any crisscrossing of the threads from one side to the other in the case of illustrative exhibits G and F, nor with illustrative exhibit B (R. pp. 140–143), representing the so-called Atlas cloth made on the single needle bar Tricot knitting machine.

Plaintiff's witness, Weinberg, testified that there was a difference in the method of knitting fabric on a warp-knitting machine and in knitting a fabric on the Simplex machine, namely:

The fabric on the Simplex machine is a two-bar fabric; the two needle bars are cooperating with each other in forming the fabric, and you could call it a knitting process in a third dimension, because in addition to the up and down motion the fabric is also knitted in cooperation with the second needle bar in a third direction.

Q. Which is not longitudinal in the sense that you use that term?

A. That is right (R. p. 52).

Plaintiff's witness, Frank A. Bell, described the knitting of Simplex fabric on a Simplex machine as follows:

The group of threads are formed in loops on one needle bar, then that needle bar stops its operation, and these same threads are carried to the other needle bar by means of the thread guides and a row of loops is formed on that needle bar. Then, after that, it comes back to the first needle bar, forming, creating, an interknitted fabric.

   *       *       *       *       *       *       *

Q. What is the position of the needle bars in this machine? Are they in a vertical position or a horizontal position, or how would you describe them? The needle bars, not the needles.

A. They are a horizontal bar.

Q. How long is it, approximately?

A. Approximately 84 inches.

Q. And you say there were two of those bars in the Simplex machine?

A. Yes, sir.

Q. How many needles would there be to that bar, to one of those bars?

A. There would be 32 needles per inch for 84 inches.

Q. I see. And would that be true of both needle bars?

A. Yes; they are both alike.

   *       *       *       *       *       *       *

Q. Are there one or two operating sides to the machine?

A. There are two operating sides (R. p. 84, 85).

   *       *       *       *       *       *       *

Q. Did I understand you to say that only one side of this machine operated at a time, Mr. Bell?

A. Yes, sir.

Q. And then what happens?

A. In the operation of the simplex machine?

Q. Yes.

A. Then this stitch is formed on one needle bar, then the thread guides carry the threads to the other needle bar, forming a stitch there by interknitting the two sides.

Q. In what direction is that thread carried by the thread guides from one needle bar to another?

A. You might say it is in depth, through the fabric.

Q. Not in the direction in which the fabric is being made?

A. No; at right angles to the fabric (R. p. 86).

   *       *       *       *       *       *       *

Q. What do you mean by interknitting feature?

A. The feature of carrying the threads from one needle bar to another by means of thread guides, creating an interknitted fabric.

Q. How does that action in the production of the simplex fabric differ from warp knitting, as you understand it?

A. Warp knitting is only done with one needle bar, and each row of loops is directly above the other (R. p. 89, 90).

Plaintiff's witness, Searles, testified that he did not consider the fabric represented by exhibit 1 and illustrative exhibit A as warp knitted for the reason that the warp knitting was secondary and not primary, because there is an operation involving an interknitting feature.

Q. Explain that a little more in detail? How is it made?

A. Well, on a two-needle bar machine.

Q. Yes.

A. Also having two bar sinkers and two pressers, respectively, and two cam shafts, respectively. The warp is applied in the machine and fed through what we term thread guides.

Q. How many of them?

A. There can be a various number.

Q. For each needle?

A. There could be two threads applied to each needle, but only one thread to a guide.

Q. There would be two to a needle?

A. Two to a respective needle in a two-bar fabric, which this is. Loops are formed on a respective needle bar, containing several needles for the formation of the stitch. This said needle bar becomes inactive to guide the threads and carry the threads to the opposite needle bar, which becomes active and forms a loop, and completes the stitch. In so doing, in the mechanism of the machine these two loops, or stitches rather, are interknitted, the one with the other (R. p. 113, 114).

The testimony of plaintiff's witness, Holzhey, on the difference between the Simplex knitting machine and a warp-knitting machine was much the same as that of the preceding witness, Searles (R. pp. 162–165).

Plaintiff's witness, Sidney Worms, stated that a Simplex fabric is not a warp-knit fabric, because it is more than a warp-knit fabric. He testified further as follows:

Q. In what respect do you regard it as being more than a warp-knit fabric?

A. Due to the fact that the machine which produces the fabric is built with two needle bars and accouterments thereto to make the machine operate properly. I can describe them if you want me to, or continue. And in knitting the fabric, in order to produce it, the machine must take one set of threads, or part of the threads of the warp which is feeding the needles, and form a portion of a loop. That portion of the loop, after it is formed, remains on that needle bar on which it is formed. That thread in the thread guide is then worked across the face or the side of the needle bar, and goes to the rear needle bar, where it engages the rear needle bar, meanwhile the front needle bar remaining inactive. There is a distinct stoppage on the front while the rear needle bar functions.

Q. What direction does the action then take? Is it lengthwise?

A. It is not lengthwise; it is through the machine, or through the depth, or, still further elucidating it, it would be really a third dimension.

The witness stated further that he did not consider the Simplex machine to be a warp-knitting machine, because it is more than a warp-knitting machine "in the fact that after the loops that are formed, similar to warp-knitting machine loops, they take an entirely different direction, and work entirely different from that point on" (R. pp. 195–197).

Plaintiff's witness, Beers, also stated that in his opinion a Simplex machine is not a warp-knitting machine, and continued:

A warp-knitting machine produces—you asked me the functions. A warp-

knitting machine knits on a single needle bar, feeding a multiplicity of threads to a unitary or single needle bar and forming these threads into a series of connected loops, running lengthwise, that is generally lengthwise in the fabric, as they may zig-zag or take an oblique course, depending upon the pattern to be created, whereas in the simplex knitting machine an entirely different action occurs. The simplex knitting, after feeding the multiplicity of yarns to one group of needles, and partially forming those into loops, the thread guide bars to which the thread guides are attached perform an interknitting operation; that is, it takes these threads which have just been partially knit on one needle bar and transfers these threads to a second needle bar on this Simplex machine, feeding these threads to these needles of the second bar, and performing the function of forming the threads into loops, thus creating an entirely different type of fabric.

Q. In what direction is that transfer of the threads which you described on the Simplex machine, from the one needle bar to the other needle bar?

A. It goes in depth through the plane of the fabric. It is substantially at right angles, or in a third dimension, rather than as warp-knitting is known, as a plane of loops, as on a single plane, not having depth (R. p. 208).

All of plaintiff's witnesses gave it as their opinion that the Simplex machine was not a warp-knitting machine, while all of defendant's witnesses claimed that it was a warp-knitting machine. As to the operation of the Simplex machine and the manner of knitting the cloth of which the gloves in question were made, there seems to be no conflict between the testimony of plaintiff's witnesses and that of defendant's witnesses Meinig, Beyrich, and Winkler.

According to the testimony herein the Simplex knitting machine was designed and constructed to make a glove fabric to overcome certain defects and shortcomings with the glove fabric known as "Duplex" cloth. Duplex cloth was made, and is still made, by pasting together either two pieces of Tricot fabric, known as "Atlas" cloth, or a piece of Atlas cloth and a piece of another cloth (R. pp. 26, 27, 255, 256, 261, 262, 285, 286, 336). Atlas cloth is shown to be a well-known and widely used warp-knit glove fabric, consisting of one layer of fabric with a face and a back, or a "right" and a "wrong" side. Being too thin or too light for gloves for cold weather use, it probably was the reason for the making of Duplex cloth by combining, as before stated, either two pieces of Atlas cloth, or of Atlas cloth and another cloth. But even this evidently was not entirely satisfactory, because the pasted cloth became stiff after washing and the pasted pieces of fabric showed a tendency to separate. These defects appear to be overcome in the Simplex fabric, as the two constituent layers of loops or fabric therein are joined together by interknitting.

It is evident from the record that Atlas cloth is the type of warp-knit fabric which most closely resembles Simplex fabric. Atlas cloth is also believed to be the best known and most widely used type of warp-knit fabric in the glove-fabric industry. In several respects it bears a close resemblance to Simplex fabric in that each needle loop in Atlas cloth is made in much the same way as each needle

loop in Simplex fabric. It also appears to be as finely knit as Simplex fabric, as shown by illustrative exhibit F, a sample of Atlas cloth made of 100/1 cotton yarn, and illustrative exhibit A, a sample of Simplex fabric made of the same size cotton yarn. Probably, therefore, on account of the said points of resemblance of Atlas cloth to Simplex fabric many of the defendant's witnesses have referred to Atlas cloth as "Tricot" fabric, and to Simplex cloth as "double-tricot" fabric, the term "double-tricot" being used by them interchangeably with the term "Simplex" to designate Simplex fabric.

Atlas fabric, however, is shown to be knit on only one row of needles on one needle bar, whereas Simplex fabric is knit on two rows of needles on two needle bars (R. pp. 263, 309, 334). Hence, Atlas cloth consists of only one layer of fabric (R. pp. 86–88, 210, 382), whereas Simplex fabric consists of two layers of loops or fabric. (R. pp. 86–88, 93, 209–212, 270, 335, 383, 384.) A layer of fabric, according to plaintiff's concept, and as apparently understood by the other witnesses in the case, means a series of horizontal rows of needle loops (courses), one row above the other throughout the length of the fabric, each row in series (whether consisting of single-threaded or double threaded needle loops), being knit on the same plane on one needle bar (R. pp. 158, 211, 215, 216). Also, that 'two layers of fabric mean two series of horizontal rows of needle loops, the rows in each series being one above the other throughout the length of the fabric, and the rows in the two series (whether consisting of single-threaded or double-threaded needle loops) being knit in two parallel planes, respectively, on two rows of needles on two needle bars (R. pp. 93, 209, 210, 263, 270).

Simplex cloth, therefore, is not only heavier than and twice as thick as Atlas cloth, but its production requires the interknitting of the course of needle loops which are made on the two courses of needles, respectively (R. pp. 87, 88, 90, 91, 93, 113), while no interknitting is required or present in the making of Atlas cloth (R. p. 88). Furthermore, there is a difference in the position of the sinker loops in Simplex fabric and Atlas cloth. The sinker loops in Simplex fabric run in depth through the fabric and connect one layer thereof with the other layer, as shown by illustrative exhibits R–1 to R–6, while in the case of the Atlas cloth, which consists of only one layer of fabric, the sinker loops do not run in depth through the fabric but hug or lie flat against the back of the fabric, as shown by illustrative exhibits V–1 to V–4 (R. pp. 164, 212, 213, 323, 324, 382, 383).

It is argued by the plaintiff in its brief that all of the above-mentioned differences between Simplex fabric and Atlas cloth reflect the differences between the method of knitting on the Simplex knitting machine and warp knitting, and emphasize the importance of the interknitting function of the Simplex knitting machine, which it

is claimed stamps the Simplex machine as substantially different from a warp-knitting machine (R. pp. 102, 113, 165, 189, 196, 209, 269, 270).

The theory of the defendant as to the distinguishing characteristics of a warp-knitting machine is that it is not only the method of knitting but the fact that the yarns or threads are fed from a so-called "warp beam" (a roller on which a number of threads are wound parallel to one another), known as "warp-threads" or a "warp," while the plaintiff contends that a warp-knitting machine is a machine which makes a warplike structure in a fabric by knitting.

This difference of opinion as to the meaning of a warp-knitting machine is really the only controversy in this case. All of plaintiff's witnesses have testified that in their opinion the Simplex knitting machine is not a warp-knitting machine, based on the fact that the method of knitting on that machine is different from warp knitting. On the other hand, 14 of defendant's witnesses stated that in their opinion the Simplex knitting machine is a warp-knitting machine, based mainly on the proposition that any knitting machine which knits from a warp is a warp-knitting machine. Some of defendant's witnesses, however, gave no reason whatever for their conclusion. The defendant's witnesses who thought that any knitting machine which knits from a warp is a warp-knitting machine, generally defined the term "warp" as meaning a number of threads wound parallel to one another on a roller, called "warp-beam," and in a position where they have not reached the needles of the knitting machine. Some of the said witnesses indicated that the mere use of such threads as material by a knitting machine makes it a warp-knitting machine irrespective of the direction in which the threads are knit and run in the fabric. However, on cross-examination five of defendant's witnesses indicated that the direction in which the threads in warp-knit fabric are knit and run is lengthwise of the fabric, i. e., from the lowest course (horizontal row of needle loops) in the fabric to successively higher courses throughout the length of the fabric, or "warpwise," as described by witness, Hartung (R. pp. 305–307). Another of defendant's witnesses, Beyrich, stated that the lengthwise direction in which the knitting is done on a warp-knitting machine is the real distinction between warp knitting and a different kind of machine knitting (R. pp. 318, 319). Defendant's witnesses, Johnson and Engelhard, however, described or explained the meaning of warp knitting without any reference to the alleged requirement that the threads must come from a warp beam.

We think it may be fairly said, however, that all the witnesses, both for the plaintiff and the defendant, are in agreement that the threads in a fabric produced by warp knitting are knit and run lengthwise of the fabric, although most of the defendant's witnesses also

claim that they must also come from a warp or warp beam. Defendant's witness, Hartung (R. 307) and plaintiff's witness, Worms (R. pp. 439, 440, 457), testified that some knitting machines do both warp knitting and weft knitting, e. g., the Van Raalte nonrun stocking machine. And it also appears, according to defendant's own witnesses, that some knitting machines that are supplied with only warp threads do more than warp knitting. To that effect, plaintiff's witness, Meinig, testified:

X Q. Do you know of any knitting machine which uses only warp threads, and in which one or more of the warp threads is used as a filling in the fabric?
A. Tricot machines can use warp threads as a filling by laying blind.
X Q. By means of a special thread guide?
A. No, you can do it with your regular bars (R. p. 257, 258).

Defendant's witness, Hartung, testified:

X Q. Are you familiar with any machine, any knitting machine which employs only warp threads, but in which one or more of the warp threads are used as filling threads in the fabric?
A. I am (R. p. 301).

Defendant's witness, Bassist, testified:

X Q. Do you know of any knitting machine which uses only so-called warp threads, but in which one or more of those warp threads are used as filling threads?
&ast; &ast; &ast; &ast; &ast; &ast; &ast;
A. You can have a warp, but you can't take from the warp a filler.
&ast; &ast; &ast; &ast; &ast; &ast; &ast;
You can have a warp that makes the loops, and you can take a warp that makes the filling, or you can take a warp on only one thread that makes the filling.
&ast; &ast; &ast; &ast; &ast; &ast; &ast;
You can make a filling from a warp, but you can make also a filling from one thread, too (R. p. 333, 334).

Then again, according to defendant's own witnesses, some knitting machines which are not supplied with warp threads nevertheless knit lengthwise of the cloth which they produce. Defendant's witness, Meinig, after defining warp threads as those coming from a warp beam, testified as follows:

X Q. Do you know of any knitting machines which knit in a lengthwise direction, that is in the direction in which the cloth is being produced, and which do not use warp threads as you have defined them?
A. I do (R. p. 259).

Again, defendant's witness, Hartung:

X Q. Are you familiar with any knitting machine which knits in a lengthwise direction, that is the direction in which the cloth is being produced, and which does not use warp threads for that purpose?
A. I am (R. p. 301).

It will be seen from the foregoing testimony that, while all witnesses are practically agreed that warp knitting means knitting threads lengthwise of the fabric, warp knitting may nevertheless be done

without using threads from a warp beam, which seems to be contrary to defendant's contention that the sole test for identifying a warp-knitting machine is its use of threads from a warp beam irrespective of the manner in which such threads may be knit after they reach the needles of the machine. This was further emphasized by plaintiff's witness, Worms, in his rebuttal testimony, who stated that he did not agree with the statement that any knitting machine that knits from a warp is a warp-knitting machine, because there are many machines that knit from a warp that are not warp-knitting machines, not only such as the Simplex knitting machine and the double-needle bar Raschell machine, but also the "Punktier Apparat machine" and the "English hand-frame, or Stockinger machine." He described the operation of the latter two machines, and stated that they are both supplied with threads from warp beams, but that such threads are knit by those machines "weft-wise" of the fabrics which they produce, i. e., in the direction from selvage to selvage (R. pp. 438–443). He further testified that warp knitting is not always done from a warp. He named the "Ruf" machine and the "Tisch" as two such examples, each of which is interchangeably supplied with a number of threads either from a warp beam or from a number of spools, each holding only one thread (R. pp. 452–454).

It would further appear that a warp beam, though a common accessory of a warp-knitting machine, is not, however, indispensable to its operation, and also that the use of such an accessory is not confined to warp-knitting machines. Therefore, we think the use of a warp beam in itself cannot be regarded as the distinguishing characteristic of a warp-knitting machine.

As bearing on the legislative history on the subject of cotton gloves, we quote from the last three tariff acts, as follows:

### ACT 1913

PAR. 260. * * * Gloves by whatever process made, composed wholly or in chief value of cotton, 35 per centum ad valorem.

### ACT 1922

PAR. 915. *Gloves*, composed wholly or in chief value of *cotton* or other vegetable fiber, *made of fabic knit on a warp-knitting machine*, if single fold of such fabric, when unshrunk and not sueded, and having less than forty rows of loops per inch in width on the face of the glove, 50 per centum ad valorem; when shrunk or sueded or having forty or more rows of loops per inch in width on the face of the glove, and not over eleven inches in length, $2.50 per dozen pairs, and for each additional inch in excess of eleven inches, 10 cents per dozen pairs; if of two or more folds of fabric, any fold of which is made on a warp-knitting machine, and not over eleven inches in length, $3 per dozen pairs, and for each additional inch in excess of eleven inches, 10 cents per dozen pairs, but in no case shall any of the foregoing duties be less than 40 nor more than 75 per centum ad valorem; *made of fabric knit on other than a warp-knitting machine*, 50 per centum ad valorem; *made of woven fabric*, 25 per centum ad valorem. [Italics ours.]

ACT 1930

PAR. 915. *Gloves* and mittens, finished or unfinished, wholly or in chief value of *cotton* or other vegetable fiber: *Made of fabric knit on a warp-knitting machine,* 60 per centum ad valorem; *made of fabric knit on other than a warp-knitting machine,* 50 per centum ad valorem; *made of woven fabric,* 25 per centum ad valorem. [Italics ours.]

From the above it will be noticed that the act of 1913 simply provided generally for cotton gloves "by whatever process made."

The provision for cotton gloves "made of fabric knit on a warp-knitting machine" appeared for the first time in paragraph 915 of the Tariff Act of 1922. An analysis of that paragraph shows it covered three different classes of cotton gloves. First, gloves made of fabric knit on a warp-knitting machine, dutiable at various rates according to condition. Second, gloves made of fabric knit on other than a warp-knitting machine, dutiable at 50 per centum ad valorem. Third, gloves made of woven fabric, dutiable at 25 per centum ad valorem.

The first of the above three classes of gloves can itself be subdivided into three separate parts; namely, (1) gloves made of fabric knit on a warp-knitting machine when of single fold and when unshrunk and not sueded, etc., at 50 per centum ad valorem; (2) the same when shrunk or sueded, etc., at $2.50 and more per dozen pairs; and (3) cotton gloves of two or more folds of fabric any fold of which was made on a warp-knitting machine, at $3 and more per dozen pairs, with the same minimum and maximum rates applicable to all three subclasses.

In paragraph 915 of the present Tariff Act of 1930 the same three general classes of gloves are provided for as in the act of 1922; namely, gloves made of fabric knit on a warp-knitting machine (2) gloves made of fabric knit on other than a warp-knitting machine, and (3) gloves made of woven fabric, the first at 60 per centum, the second at 50 per centum, and the third at 25 per centum ad valorem. As to the first provision, it now entirely eliminates any distinction, so far as any difference in the rate of duty is concerned, between sueded or unsueded warp-knit fabric gloves, and whether made of single or more folds of fabric, or whether the gloves have more or less than 40 rows of loops per inch in width on the face, or whether they measure under or over 11 inches in length.

So far as we can discover from a careful consideration of the language and arrangement of the provision for warp-knit fabric gloves in said paragraph 915 of the acts of 1922 and 1930, respectively, it seems to throw very little, if any, light on the question of what is to be regarded as a warp-knitting machine within the purview of paragraph 915 of the Tariff Act of 1930.

At the suggestion of the court, therefore, both sides were invited

to file briefs herein on the legislative history of said provisions. The briefs quote copiously from the Summary of Tariff Information, 1921, and from Congressional reports on bill H. R. 7456, which later became the Tariff Act of 1922; also from the revised edition of Tariff Information Surveys, published in 1923; also from Summary of Tariff Information, 1929, and reports of Congressional committees on bill 2667, which became the present Tariff Act of 1930. Nowhere in any of these reports, however, so far as we can discern, was the attention of Congress drawn particularly to merchandise just like the present, i. e., cotton gloves knit on the Simplex knitting machine, or to the cloth known as Simplex cloth, of which the gloves in question are made. The only glove fabric which seems to have been called to the attention of Congress at the time the tariff acts of 1922 and 1930 were under consideration was the Atlas cloth as also the duplex cloth consisting of two layers of Atlas fabric cemented or pasted together. And the only warp-knitting machines mentioned in said reports are the Tricot and the Milanese machines, which no doubt were the most widely used types of warp-knitting machines when the tariff acts of 1922 and 1930 were under consideration. Nowhere, however, in the legislative history of the said provision is there any reference to a machine called or known as the Simplex knitting machine. It is true that in the revised edition of Tariff Information Surveys, numbered 1 to 6, published in 1923, relative to cotton gloves and other subjects, a reference is made to "Gloves made of a single-fold material sometimes called 'Simplex' in contradistinction to the duplex gloves." Upon reading the full report, however, we think it is quite apparent that this single use of the word "Simplex" in said revised edition was really meant to refer to gloves made of so-called Atlas cloth knit on the Atlas warp-knitting machine, which was a single fold or layer of fabric, while duplex gloves were made of two folds of the same fabric cemented or pasted together. Such conclusion, we think, is inevitable, as Simplex cotton fabric gloves, according to the testimony, were not imported into this country until about 1927 and were not manufactured here until about 1938.

Frankly, therefore, we can find nothing in said legislative history which sheds any real light on the interpretation to be placed upon the provision for cotton "gloves made of fabric knit on a warp-knitting machine," one way or the other. It would seem therefore that the decision herein will have to be predicated entirely on the record presented and the language of said paragraph 915 of the present tariff act.

Whether a warp-knitting machine is to be regarded as one knitting with threads coming from a warp beam, and knitting in the direction in which the fabric is being produced, as claimed by the Government, or whether it is to be regarded simply as one in which the threads used to make a fabric are knit and run lengthwise of the fabric, as contended by plaintiff, it is not denied by plaintiff, but in fact admitted,

that in the production of the Simplex fabric from which the gloves under consideration were made, the stitches or loops forming the two layers or planes of the fabric are the result of warp knitting, and is to that extent identical to ordinary warp knitting. The plaintiff claims, however, that the particular function of the Simplex machine is the interknitting or cross-knitting of the two layers together, which it is argued is the primary function of the machine, as against the said warp-knitting function, which is claimed to be only secondary. In other words, as the Simplex machine warp knits and interknits simultaneously, the plaintiff therefore claims that it is more than, or different from, a warp-knitting machine, and that the involved gloves are therefore excluded from the provision for cotton "gloves made of fabric knit on a warp-knitting machine," in said paragraph 915 and are more properly dutiable under the second provision of said paragraph, as cotton gloves "made of fabric knit on other than a warp-knitting machine."

In support of such view plaintiff cites the case of *In re* Hampton, Jr., & Co., G. A. 7431 (T. D. 33191), wherein the subject matter consisted of a patented device which automatically stamped, issued, and recorded the sale of railroad tickets, and at the same time made a record of the sale and of the total sales. Accompanying the machine were certain dies or plates from which the tickets were printed. Duty was assessed on the machine under paragraph 197 of the act of 1909, as a printing press, and the dies were assessed separately as manufactures of metal, not specially provided for, under paragraph 199. The importers claimed the dies to be dutiable at the same rate of duty as the machine, as an entirety. This court (then the Board of General Appraisers) held that the machine and the dies undoubtedly were dutiable as an entirety, but nevertheless overruled the claim of the plaintiffs for the reason that it considered said machine to be "something more or other than a printing press."

Another case cited by plaintiff is that of *United States* v. *Favor*, 24 C. C. P. A. 399, T. D. 48854, wherein the question was whether certain pencils of wood filled with lead, stamped with the name of the foreign manufacturer, also with the name of the domestic customer, together with the name of customer's trade-mark, were more properly dutiable under the provision for "pencils stamped with names other than the manufacturers' or the manufacturers' trade-name or trade-mark" in paragraph 1549 (a) of the Tariff Act of 1930, as claimed by the importer, than under the provision in the same paragraph for "pencils of wood, filled with lead or other material, not specially provided for."

Counsel for the Government contended that the words "other than" should be interpreted as if reading "not" or "except." The court in that case apparently accepted the Government's interpretation of the term "other than" as meaning "not" or "except," as will

be seen from the following language of the court in sustaining the importer's claim:

We are unable to see where if the phrase "other than" be given the meaning so contended for it would follow that the pencils at issue would be excluded from classification under the clause. They are stamped with the name *not* the manufacturers' and also stamped with the name of the manufacturer. Had nothing been stamped upon them save the name of the domestic customer they still would be stamped with a name "other than", or "not", or "except", the name, trade name or trade-mark of the manufacturer, and so, even under the interpretation suggested by Government counsel, they are described in the clause under which the claim of the importer is made.

Plaintiff further cites *United States* v. *Smith Son Co.*, 20 C. C. P. A. 206, T. D. 45985, wherein certain metal pins with glass heads and glass tips were held to be something more than metal pins with glass heads. Other cases are cited by the plaintiff, which, however, do not seem to bear much analogy to the case at bar.

The words "other than" seem to be rather broad in their meaning, and, so far as the decisions cited, *supra*, are concerned, we think they may equally imply "more than," "different from," "not," or "except."

In the present case we are satisfied that the testimony shows that the Simplex knitting machine on which the fabric of which the imported gloves were made is different from, or more than, the ordinary warp-knitting machine, such as the Tricot and other machines, in that, while it warp knits two layers of fabric or planes of loops, it also interknits the two layers together by the use of sinker loops working back and forth through the fabric in depth and at right angles to the fabric, as distinguished from the lengthwise direction the knitting takes in warp knitting. And, as we think that the record also shows that the use of threads coming from a warp beam is not the essential or necessary feature of a warp-knitting machine, we are therefore of the opinion, and so hold, that the claim of the plaintiff for dutiable classification of the imported cotton gloves under said paragraph 915 as "made of fabric knit on other than a warp-knitting machine," at 50 per centum ad valorem has been established.

There are some irreconcilable differences in the testimony as to some phases of this matter. However, we have carefully considered all of this prolix record, and, of course, observed the demeanor of every witness who testified, and we are strongly of the opinion that, on the whole, plaintiff's witnesses, by reason of their long and intimate knowledge and experience in the use and operation of various knitting machines, are better qualified to know whether the knitting machine upon which the instant merchandise was manufactured was a warp-knitting machine, or other than a warp-knitting machine, and therefore think that their testimony is of greater probative value. We say this with no intention of even intimating that defendant's witnesses

did not testify to the truth as they honestly believed in the light of their experience.

For all of the foregoing reasons the protest is therefore sustained as to the merchandise hereinbefore indicated. Judgment will be rendered accordingly.