(C. D. 1569)

KWAN YUEN COMPANY
MATTOON & COMPANY, INC., ET AL. } v. UNITED STATES

United States Customs Court, Third Division

(Decided December 17, 1953)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiffs.

*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: The merchandise involved in these cases, consolidated at the trial, consists of mushrooms, one shipment of which was imported from China on or about May 31, 1948, and the other from Chile on or about December 23, 1950. They were classified by the collector as dried mushrooms and were assessed with duty at 10 cents per pound and 45 per centum ad valorem under paragraph 768 of the Tariff Act of 1930. It is claimed that they are properly dutiable at 5 cents per pound and 15 per centum ad valorem as mushrooms, "prepared or preserved, other than dried," under said paragraph, as modified by the General Agreement on Tariffs and Trade, T. D. 51802.

The pertinent provisions of the tariff act, as originally enacted and as modified, are as follows:

PAR. 768. Mushrooms, fresh or dried, 10 cents per pound and 45 per centum ad valorem; otherwise prepared or preserved, 10 cents per pound on drained weight and 45 per centum ad valorem.

PAR. 768 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802].

Mushrooms:

  \*     \*     \*     \*     \*     \*     \*

Prepared or preserved, other than dried_____ 5¢ per lb. on drained weight and 15% ad val.

At the trial, plaintiffs offered in evidence two samples representative of the imported merchandise. Plaintiffs' illustrative exhibit 1 consists of dried mushroom heads, the stems having been cut off near the top. This sample was stated to be representative of the form and condition of the merchandise which was shipped from China in cans (protest No. 184808–K). The other sample (plaintiffs' exhibit 2) consists of dried mushrooms, which have been cut or broken into pieces, representative of the form and condition of the merchandise which was shipped from Chile in cartons (protest No. 184069–K).

The only witness called at the trial was Joseph E. Pagliano, manager and buyer of Tama Trading Co., Inc., importer of the merchandise shipped from Chile. He testified that those mushrooms had been sliced, dried, and packed in cartons, and that they would have to be kept in water 15 or 20 minutes before they could be cooked, but that whole mushrooms would have to be soaked from 12 to 24 hours. The witness was shown plaintiffs' illustrative exhibit 1 and stated that he had imported similar merchandise 25 or 30 years ago; that the stem had been removed, giving it a fancy head and making it more palatable, since the stem is not as desirable a part of the mushroom as the top.

Mr. Pagliano also testified that he was familiar with mushrooms in various forms and conditions; namely, canned fresh mushrooms in water, containing the tops or buttons only, or pieces and stems; dried

mushrooms, packed in tins; mushrooms, pickled or spiced, sliced, and prepared in olive oil; and fresh mushrooms, broiled in butter and water, and packed in tins.

On cross-examination, the witness stated that the merchandise represented by the samples herein was known commercially as dried mushrooms; that dried mushrooms had characteristics different from those of fresh mushrooms; and that they were different from articles known as preserved mushrooms, such as those packed in olive oil.

The point at issue is whether the imported merchandise, dried mushrooms, which have been sliced or have had the stems removed, is dutiable as dried mushrooms, or as mushrooms, "prepared or preserved, other than dried." The plaintiffs claim that these mushrooms are more than dried; that they have been advanced toward the condition in which they are used, and are, therefore, prepared by an operation other than or in addition to drying.

Dried mushrooms have been before the courts on several occasions. In *Lucciano Rossi* v. *United States*, 24 C. C. P. A. (Customs) 18, T. D. 48290, the merchandise consisted of mushrooms, which had been cut or sliced into small pieces and then dried. It was held dutiable as mushrooms, dried, under paragraph 768, Tariff Act of 1930, rather than as vegetables, sliced, under paragraph 775 of said act, the court noting that the inherent characteristics of sliced, dried mushrooms were precisely the same as the inherent characteristics of whole, dried mushrooms, which admittedly fell within the provision for dried mushrooms.

*B. Cardinale* v. *United States*, 8 Cust. Ct. 119, C. D. 588, involved sliced, dried mushrooms, packed in tins, with crushed black pepper and bay leaves. They were held dutiable as dried mushrooms under paragraph 768, Tariff Act of 1930, rather than as "mushrooms, prepared or preserved, other than dried," under said paragraph, as modified by the trade agreement with France, T. D. 48316, or as sliced vegetables under paragraph 775. The court said that the provision for dried mushrooms in paragraph 768 covered all forms of the article, including sliced, dried mushrooms. In connection with the claim under the trade agreement with France, it was stated that the mushrooms were dried, thus automatically excluding them from classification as "prepared or preserved, other than dried."

Similar merchandise was before the court in *S. M. Sartori, Inc.* v. *United States*, 12 Cust. Ct. 145, C. D. 844, and it was again held dutiable as dried mushrooms under paragraph 768 rather than as "mushrooms, prepared or preserved, other than dried," under the trade agreement with France. The court said (p. 148):

It is well settled, therefore, that the slicing and drying of the articles and the packing thereof in airtight containers do not bring them within the provisions for mushrooms, "prepared or preserved."

In the instant case, plaintiffs claim that the language "prepared or preserved, other than dried" in paragraph 768, as modified by the General Agreement on Tariffs and Trade, T. D. 51802 (which is the same language as that used in the trade agreement with France, T. D. 48316), is to be construed to read "prepared or preserved, more than or in addition to dried" rather than "prepared or preserved, except dried." The words "other than" are broad in meaning and may imply "more than," "different from," "not," or "except." *Julius Kayser & Co.* v. *United States*, 14 Cust. Ct. 126, C. D. 925 (affirmed *sub nomine United States* v. *Julius Kayser & Co.*, 33 C. C. P. A. (Customs) 179, C. A. D. 333), and cases there cited. In a case such as this, therefore, where words may have different meanings, resort to extrinsic aids is proper. *Norwegian Nitrogen Products Co.* v. *United States*, 288 U. S. 294; *Sears, Roebuck & Co.* v. *United States*, 26 C. C. P. A. (Customs) 161, C. A. D. 11; *United States* v. *Kung Chen Fur Corporation*, 38 C. C. P. A. (Customs) 107, C. A. D. 447.

Paragraph 768 of the Tariff Act of 1930, as originally enacted, provided for mushrooms, fresh or dried, and for mushrooms, *otherwise* prepared or preserved. The rates of duty were the same, but the specific duty on mushrooms, prepared or preserved, was to be taken on the *drained* weight, indicating that merchandise packed in a liquid was referred to. This view is supported by statements in the Summary of Tariff Information, 1929, to the effect that mushrooms are sold fresh, in cans, and dried, and that 1 pound of fresh mushrooms is required to makes 8 ounces of *drained canned* mushrooms. It is also pointed out that mushrooms which could not be sold fresh in the United States are canned, but that dried mushrooms are not produced here.

Upon the basis of this information, separate classifications were provided for fresh mushrooms, dried mushrooms, and mushrooms, otherwise prepared or preserved, the latter to cover the canned product.

In the trade agreement with France, T. D. 48316, the rate of duty was reduced upon mushrooms, "prepared or preserved, other than dried." It is obvious that this was intended to apply to the commodity described in the tariff act as mushrooms, "otherwise prepared or preserved." The specific duty was again made applicable on the basis of the drained weight, and, in an Analysis of the General Provisions and Reciprocal Concessions of the trade agreement between the United States and France, issued by the Department of State on May 13, 1936, the concession in paragraph 768 is listed as referring to canned mushrooms.

Subsequently, it was held by this court that sliced dried mushrooms were not covered by the concession. *B. Cardinale* v. *United States, supra; S. M. Sartori, Inc.* v. *United States, supra.* Thereafter,

the General Agreement on Tariffs and Trade, T. D. 51802, was negotiated and the same language was used. It may be presumed that the negotiators of the later agreement had knowledge of the judicial construction of the earlier one, and, since the phraseology was not changed, that they acquiesced in such construction. *Florida Fishermens Supply Co.* v. *United States*, 23 Cust. Ct. 204, Abstract 53713. Note in this connection that the Summaries of Tariff Information, 1948, volume 7, part 6, distinguish fresh mushrooms, dried mushrooms, and canned mushrooms. It is stated that dried mushrooms are marketed sliced or whole and that sliced mushrooms are frequently packed in tins. Canned mushrooms are described in a separate summary, and it is apparent that a commodity different from dried mushrooms in cans is referred to.

We conclude, therefore, that the merchandise intended to be covered by the words "prepared or preserved, other than dried" was not dried mushrooms, whether whole, sliced, or stemmed, but mushrooms, prepared or preserved in some different manner, principally canned in liquid. Sliced, dried mushrooms were intended to be covered by the provision for dried mushrooms.

An additional reason for this conclusion is that the term "dried" is more specific than the term "prepared or preserved," and merchandise which has been dried and additionally processed by such operations as cutting, shredding, or powdering, is classified as dried, rather than as prepared or preserved. *United States* v. *Aki Co.*, 12 Ct. Cust. Appls. 415, T. D. 40588 (fish, skinned, boned, and dried); *F. H. Shallus & Co.* v. *United States*, 18 C. C. P. A. (Customs) 332, T. D. 44585 (egg albumen, dried and broken into pieces); *United States* v. *Enbun Co.*, 19 C. C. P. A. (Customs) 79, T. D. 45224 (fish, dried and shaved or shredded); *United States* v. *D. L. Moss & Co.*, 22 C. C. P. A. (Customs) 249, T. D. 47159 (egg albumen, dried and powdered); *F. F. G. Harper & Co., Inc.* v. *United States*, 27 C. C. P. A. (Customs) 9, C. A. D. 53 (flake whole egg and flake egg yolk, dehydrated, "screened" into flakes, and kept in freezing temperatures); *Jacques Missir* v. *United States*, 65 Treas. Dec. 941, T. D. 47093 (figs, boiled, dried, and subjected to steam and carbon dioxide); *Naumes Forwarding Service* v. *United States*, 24 Cust. Ct. 93, C. D. 1214 (chestnuts, dried and shelled).

In *United States* v. *Enbun Co., supra*, it was argued by the Government that because the dried fish had been subjected to a further process, that of shredding and shaving, it was more than dried fish and was classifiable as prepared fish. The court held, however, that drying was a kind of preservation and that the language "dried fish" was more specific than fish "otherwise prepared or preserved."

In *United States* v. *D. L. Moss & Co., supra*, there was evidence that egg albumen, dried and powdered, was instantly soluble in

water and could be used in the manufacture of meringue powder, whereas the material from which it was made (dried egg albumen) could not be so used. It was, nevertheless, held dutiable as dried rather than as prepared egg albumen.

See also *F. F. G. Harper & Co., Inc.* v. *United States, supra,* where the court said (p. 12):

It will be observed that paragraph 713 of each of the said tariff acts [1922 and 1930] provides for "dried whole eggs, dried egg yolk and dried egg albumen," without limitation. In our opinion, therefore, the form of the merchandise whether it be powder or flake or the condition in which the egg meats must be kept is entirely immaterial, when, as the evidence discloses here, the articles have been subjected to a drying process.

The merchandise at bar is known commercially as dried mushrooms and has characteristics different from those of fresh or preserved mushrooms. Even a casual examination of the samples discloses that they have been dried. The fact that they have also been cut in pieces or the stems removed, which may have advanced them for use, does not, under the cases cited, take them out of the category "dried" into the category "prepared or preserved, other than dried." The cases referred to by plaintiffs stating that merchandise, which has been mechanically changed by cutting, slicing, pitting, etc., is "prepared" do not involve articles which have also been dried, a specific form of preparation. *United States* v. *Conkey & Co.,* 12 Ct. Cust. Appls. 552, T. D. 40782 (frozen lamb); *Stone & Downer Co.* v. *United States,* 17 C. C. P. A. (Customs) 34, T. D. 43323 (fresh dates, pitted); *Moscahlades Bros., Inc.* v. *United States,* 30 Cust. Ct. 289, C. D. 1534 (olives in brine, slashed).

For the reasons stated, we hold that the merchandise herein is properly dutiable at 10 cents per pound and 45 per centum ad valorem under paragraph 768 of the Tariff Act of 1930, as dried mushrooms. The protests are overruled and judgment will be rendered for the defendant.