AMERMAN & PATTERSON (INC.) *v.* UNITED STATES (No. 2180).[1]

1. BRINE.

A solution 4 per cent salt is brine within the meaning of the provision of paragraph 488, tariff act of 1913, for "fruits in brine."

2. CONSTRUCTION, PARAGRAPHS 217 AND 488, TARIFF ACT OF 1913—PREPARED EDIBLE FRUITS—FRUITS IN BRINE.

The free-list provision of paragraph 488, tariff act of 1913, for "fruits in brine" is not applicable to fruits which, prior to importation, have been processed so as to advance them to the status of "edible fruits * * * prepared" under paragraph 217.

3. COMMERCIAL DESIGNATION.

As to pineapples in brine, which have been so far advanced as to render them answerable to the call of paragraph 217, tariff act of 1913, for "edible

[1] T. D. 40047.

fruits *. * * prepared," proof that they are commercially known as pineapples in brine can not effect their classification as "fruits in brine" under paragraph 488.

4. PINEAPPLES IN BRINE PREPARED TO BE GLACÉD.

Green pineapples, peeled, cut into rectangular pieces, treated with sulphur and brine, and imported in brine, being thus processed as a preliminary to their manufacture into glacé pineapple, have been so far advanced as to be something more than the "fruits in brine" accorded free entry by paragraph 488, tariff act of 1913; and their classification as "edible fruits * * * prepared," under paragraph 217, is approved.

United States Court of Customs Appeals, February 25, 1924.

APPEAL from Board of United States General Appraisers, G. A. 8525 (T. D. 39095).

[Affirmed.]

*Hatch & Clute (Maurice W. Clarke* and *Harold N. Whitehouse* of counsel) for appellant.

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

[Oral argument January 23, 1923, by Mr. Hoppin.]

Before MARTIN, Presiding Judge, and SMITH and BARBER, Associate Judges.

[Oral reargument February 14, 1924, by Mr. Clarke and Mr. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

MARTIN, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this case was imported from Cuba under the tariff act of 1913. It was described upon the invoice as pineapples in brine, and the importer claimed free entry for it under the enumeration of "fruits in brine" in paragraph 488 of the act. The collector, however, assessed it with duty at the rate of 1 cent per pound, under the provision for "all edible fruits, * * * prepared in any manner, not specially provided for," in paragraph 217 of the act.

The following is a copy of paragraph 488, and of the pertinent part of paragraph 217, as cited:

(Dutiable list.)

217. * * * all edible fruits, including berries, when dried, desiccated, evaporated, or prepared in any manner, not specially provided for in this section, 1 cent per pound; * * *

(Free list.)

488. Fruits or berries, green, ripe, or dried, and fruits in brine, not specially provided for in this section.

The issue before the board therefore was whether the merchandise was dutiable under paragraph 217 as edible fruits prepared in any manner, or was entitled to free entry as fruits in brine under para-

graph 488. The board overruled the protest, and the question now before the court is whether that decision is unsustained by the record, or is manifestly contrary to the fair import thereof.

It appears that the merchandise was produced in the following manner: Pineapples while yet green were peeled, then cut into rectangular pieces, then subjected to fumes of sulphur dioxide, then immersed in brine composed of about 20 pounds of salt to 45 gallons of water, which after several days was replaced by fresh brine apparently of equal strength, then packed in barrels and covered with other brine ready for shipment. The article was intended for use in this country as material in the manufacture of glacé pineapple, and it was sliced and treated with sulphur fumes and brine before importation in order to prepare it for that purpose. The process tended to bleach the fruit, and to make it harder and firmer in texture, and also aided in permitting the sugar to penetrate into it. If sliced pineapple should be imported without being thus processed with intensive brine and sulphur fumes, it would become soft and dark, and would not be suitable as glacé material. And if fresh pineapples should be imported to be made into glacé pineapple, it would be necessary after importation to treat them with sulphur fumes just as these were treated before importation. It appears from the record that for some years prior to 1920 it was the practice of the importers to ship fresh pineapples from Cuba into Florida, and there process them with sulphur fumes in order to prepare them as glacé material.

Upon these facts we think that the imported merchandise answered to the description of "edible fruits   *   *   *   prepared in any manner," and was rightly assessed with duty under the provisions of paragraph 217. At the time of importation the present article was advanced in condition from the tariff status of mere green or ripe fruit to that of prepared fruit, for the treatment above described was virtually the first step in the manufacture of another commodity, namely, glacé pineapple, and the original pineapple was thereby prepared as material for that manufacture. In the case of Causse Mfg. Co. *v.* United States (151 Fed. 4, Circuit Court of Appeals, Second Circuit), cherries from which the pits had been removed were washed several times in water, as a result of which dirt and free juices were removed, then exposed to sulphur fumes, then packed in casks in a weak solution of salt water in order to preserve the fruit in transit, and then imported to be converted into candied cherries. These were held to be dutiable as prepared edible fruits under a provision in paragraph 262, tariff act of 1897, which was substantially similar to that in paragraph 217, supra. The saline solution in that case, however, was not sufficiently strong to be called brine. Therefore the decision was not rested upon the point now in question. Nevertheless the case is apt authority for the statement that fruits

thus processed answer to the description of prepared edible fruits under the act. Upon that subject the court said:

> We are also satisfied that the importations were not free under paragraph 559, and agree with the reasoning of the Board of General Appraisers and of the court below upon that question. In our judgment, they fall within the more specific description of paragraph 262, and were dutiable as "cherries," under the first part of that paragraph, or as "edible fruits  *  *  *  prepared in any manner," under the latter part. The first part would seem intended to apply to the fruits, ripe or unripe, specifically mentioned therein, when imported in their natural state. The latter part appropriately refers to the same fruits when something has been done to them to prepare them better for preservation, and which may consist either in drying, evaporating, or desiccating them, or in preparing them in any other manner. The term "other edible fruits" properly includes not only the cherries and the other fruits specifically mentioned in the first part of the paragraph, but also a class outside of these. It is used to save recapitulating all the varieties previously enumerated, and also to cover other varieties. We are not impressed with the argument that the words "prepared in any manner" are to be limited upon the rule noscitur a sociis so as to embrace only fruits prepared by a drying process. The importations in controversy are removed from the enumeration of the first part of the paragraph and transferred to that of the second because they have been prepared within the meaning of that part of the paragraph. Our conclusion is that they should have been subjected to duty at 2 cents per pound.

The fact that the pineapple now in question was imported in brine made it none the less prepared edible fruit within the sense of paragraph 217, and that paragraph should control the assessment. The free-list provision for fruits in brine is not applicable to fruits which prior to importation have been processed so as to advance them to the status of "prepared fruits," even though afterwards they should be imported in brine.

The Government raises the question whether the saline solution in which the material was shipped was in fact a brine as understood by the act. It appears that the liquid in question contained 4 per cent of salt in solution, and the board held that it was brine. We do not disagree with that finding.—Delapenha & Co. v. United States (6 Ct. Cust. Appls. 18; T. D. 35252).

The importer contends that the importations were known in the trade as pineapples in brine, and that such a commercial designation should control their classification for tariff purposes. It is very doubtful if this claim is supported by the present record, but such a designation would not contravene the present assessment. It is conceded that the importations were pineapples in brine, but they were also something more than that, for they had been so processed as to be edible fruit, prepared, and the brine did not remove them from that classification. After importation, as before, the merchandise was prepared pineapple, and retained its dutiable status as such.

The judgment of the board is *affirmed*.