(C. D. 1195)

UNION OLIVE OIL CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 7, 1949)

*Siegel, Mandell & Davidson (Sidney Mandell* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

·Before CLINE, EKWALL, and JOHNSON, Judges

CLINE, Judge: This is a protest against the collector's assessment of duty on merchandise described in the invoice as "black olives in brine" imported from Greece at 30 cents per gallon under paragraph 744 of the Tariff Act of 1930 as "olives in brine, ripe." It is claimed that the merchandise is properly dutiable under said paragraph at 20 cents per gallon as "olives in brine, green."

The pertinent provisions of the tariff act are as follows:

PAR. 744. Olives: In brine, green, 20 cents per gallon; in brine, ripe, 30 cents per gallon; in brine, pitted or stuffed, 30 cents per gallon; dried ripe, 5 cents per pound; not specially provided for, 5 cents per pound.

At the trial plaintiff introduced into evidence the record in the case of *A. G. Skourtsis, Inc.* v. *United States,* 69 Treas. Dec. 522, T. D. 48218, an official sample from the files of this court (plaintiff's exhibit 1), and an official sample of the merchandise involved herein (plaintiff's exhibit 2).

The testimony of the witnesses in the incorporated case was summarized by the court in its decision as follows:

The plaintiff introduced the testimony of four witnesses who were importers of food products, including olives, from Greece. The first witness testified that he had spent some time in Greece, had visited the olive plantations, had seen olives like Exhibit 1 harvested and that these olives are reddish or pinkish in color. He further stated that the olive is hard, its skin is very firm, its meat is firm and its texture sound and that it contains very little oil and has a bitter taste. He

testified that they are picked from the tree by hand, submerged in a salt solution in huge vats and allowed to remain there for a year or two, after which they are put into barrels in brine and shipped to this country; that the purpose of using the brine solution is to preserve the olives; that the salt solution does not change the texture of the olive; that they are firm; that the salt takes the bitterness out of them and makes them sweeter. He further testified that in the condition as picked from the tree the olive in his opinion was an immature olive, that the sample (Exhibit 1) is in the same state as the olive when it was originally picked from the tree; that it did not mature. In answer to questions by the court this witness stated that these olives are picked just as they begin to turn from a green to a pinkish color; that if they were left on the tree the meat would begin to get softer and softer and the skin would wrinkle and the whole olive would become black, the meat soft and oily. On cross-examination in answer to a question he stated that as the olive begins to mature it becomes pinkish in color.

* * * [The second witness] stated that the difference between the Greek ripe olive in brine and the Greek green olive in brine is that the meat of the ripe olive is very soft, the skin is very wrinkled, the oil content is very heavy, and "there is almost none of the water that there is in the unripe olive", the only moisture is practically oil; that the color of the meat is different all the way through, the ripe olive being completely black through and through; that the skin is wrinkled or shriveled as compared with the unripe olive, which is "full in appearance"; that they differ in taste, the completely ripe olive being sweet and oily in taste and the unripe very bitter, and after it has been in brine for some time the brine makes the olive salty.

This witness stated that based on his experience in dealing with Greek olives he would say that the olives as represented by Exhibit 1 are unripe. It was also brought out in this witness' testimony that from about 1908 to 1926 or 1927 he had handled ripe olives in brine, but that he had stopped importing those ripe olives because of the change in demand in the type of olive the trade wanted; that they wanted an "olive that would last longer," that the ripe olive, in the ultimate seller's hands, would spoil too quickly, whereas an olive like those here involved would hold up much better. * * * He stated that there is a difference in the state of maturity of olives as they grow; that as olives begin to get ripe and take on a pinkish hue, in his opinion "the change in color, * * * is not necessarily a mark of maturity"; that he did not think the color had anything to do with the question of maturity, because "there are olives that are black on the skin that are still unripe." He was asked on cross-examination whether an olive taken from the sample of the imported merchandise (Exhibit 1) was not wrinkled, to which he replied that there were a few wrinkles. He was asked to cut the olive and state the color of the meat of the section as cut. He called the color grayish. He stated that the color of the inside of a ripe olive is black; that today, so far as he knew there is no such thing on the market as a Greek ripe olive. * * *

The court held that the common meaning of the word "ripe" when applied to fruits is "mature"; that the olives in that case had been picked from the trees while immature; that, therefore, they were properly dutiable at 20 cents per gallon under paragraph 744 as olives in brine, green.

In the instant case the defendant introduced the testimony of five witnesses in order to prove commercial designation or to aid the court in determining the common meaning of the terms "ripe olives" and "green olives."

The first witness called was Joseph Margiotta, a buyer and seller of foods, especially olives, since 1923. He identified a jar of merchandise as containing California black ripe olives and the same was marked in evidence as defendant's illustrative exhibit C. The witness then stated that olives are grown in this country in California and Arizona; that they are picked on the verge of maturity when they are a reddish-pinkish color; that they are taken to a plant where they are put in brine and then in a lye solution; aerated until they acquire the degree of color or darkness desired; then washed and put in vats for a time until they are canned.

The witness was then shown a jar of merchandise which he identified as containing a Spanish type green olive. This was marked defendant's illustrative exhibit D. Another exhibit was identified by the witness as containing Sicilian style green olives, California produced (defendant's illustrative exhibit E). He stated that olives used to make the latter variety are picked while still green in color before they have matured; that they are then subjected to salt solution, fermentation processes, sorted, and placed in the final brine ready for sale.

The witness then identified another sample as a can of California green ripe olives (defendant's illustrative exhibit F), stating that they were of an olive drab color with mottled specks. He stated further that the taste of green ripe olives is similar to that of black ripe olives, whereas the ordinary green olives taste sharper and more bitter.

The witness testified that in his commercial experience he had become familiar with the terms "ripe olives in brine" and "green olives in brine"; that those terms were well known in the olive trade, except that the term "green olives" is qualified as to type, either Spanish or Sicilian, or some other variety; that in the purchase and sale of green olives in the United States, the color of the olive is always green.

Counsel for the Government read to the witness the following quotation from *Capolino & Bianco, Inc.* v. *United States*, 66 Treas. Dec. 772, T. D. 47420:

> The commonly understood meaning of the word "ripe" when applied to fruits is that they have matured.

The witness stated that this definition coincided with the meaning of the word "ripe" as used in the trade and commerce of the United States with respect to olives; that in the olive trade the word "ripe" is considered to refer to California black ripe olives; that there are other types of ripe olives produced in the United States, namely, the green ripe olive and the Greek style olive.

On cross-examination Mr. Margiotta testified that he had handled Greek olives in brine from 1925 to 1934 or 1935; that he had bought and sold them as Greek black olives; that he had never used the term "ripe" in referring to that article, but that he had heard that term

applied to them commercially; that defendant's illustrative exhibit F is a ripe olive of a green color; that the taste of the green olive is sharp and bitter and the taste of the ripe olive is sweeter, mellower, and oilier; that defendant's illustrative exhibit C is bought and sold commercially as California black ripe· olives; that he had never seen the picking and processing of olives in California, but that his testimony was based upon his reading, mainly of publications of the University of California; that defendant's illustrative exhibit F is bought and sold commercially as California green ripe olives.

On redirect the witness stated that plaintiff's exhibit 2 would not be acceptable as good delivery for an order of green olives in the commerce of the United States, and on re-cross-examination he stated that he could not deliver anything as "green olives"; that the designation must be qualified by a description, such as Spanish, Sicilian, California-Spanish style, or California-Sicilian style.

The second witness called by the defendant was John Brauss, an employee of La Manna Azema & Farnan, Inc., importer of food products. He testified that he specialized in Spanish green olives; that he supervised the importation of products and had personally made sales of both green and ripe olives all over the United States; that he had been engaged in this line of business for 29 years; that he had handled California ripe olives; that they are dark olives, deep purple to black in color; that a green olive is green in color; that the terms "green olives" and "ripe olives" are well known in the olive trade; that when he purchases green olives, he means Spanish olives, green in color; that when he buys ripe olives, he means dark purple or black olives from California; that ripe olives are bought and sold in the United States as California ripe olives; that plaintiff's exhibit 2 is not a green olive so far as he is concerned and that it is not a California ripe olive. Counsel then read to the witness the statement from *Capolino & Bianco, Inc.* v. *United States*, quoted above, and the witness stated that that definition coincided with his understanding of the meaning of the word "ripe" as used in the trade and commerce of the United States with respect to olives; that ripe olives are matured olives; that olives which are to be processed as California ripe olives are picked when well matured; that fully matured olives are never bought and sold as ripe olives; that fully ripened olives are used to obtain olive oil; that plaintiff's exhibit 2 would not be a good delivery in the olive trade of the United States for an order of green olives, since they are not green in color.

On cross-examination, Mr. Brauss testified that his experience in buying and selling olives in the United States was largely confined to Spanish olives; that he handled California green olives, pitted, for cocktails, and California ripe olives; that he had observed part of the processing of olives in California; that Spanish olives are referred to

by variety, that is, "Queen Olives," "Stuffed Queen Olives," "Manzanita Olives"; that the term "green" is rarely used; that California ripe olives are bought under that name.

Lars O. Odden, customs examiner, identified defendant's illustrative exhibit H as a sample from an importation of olives from Greece and testified that it was designated on the invoice and the entry as "green cracked olives in brine," and was classified as olives in brine, green, under paragraph 744. He identified defendant's illustrative exhibit I as a sample from a shipment of olives from Greece and testified that it was described on the invoice and the entry as black olives in brine and was classified as olives in brine, ripe, under paragraph 744.

The next witness called by the defendant was DeWitt C. Reed, executive secretary of the Association of American Importers of Green Olives, who testified that he has been secretary of the association since 1933; that his experience with olives went back to about 1926, at which time he edited a magazine called "Olive Oil"; that he had negotiated ceiling prices for the various types of green olives under OPA regulations; that the various types of Spanish olives included manzanillas, plain and stuffed, and queens, plain and stuffed; that by green olives, he means those which have been taken off the tree the moment before there is a blush on them; that they are straw-colored, and curing makes them green; that they are green in color when bought and sold.

The last witness called was Ercole L. Sozzi, vice president of Fontana Hollywood Corp., food broker and importer, representing Lindsay Ripe Olive Co., said to be one of the largest packers of olives in the world. He testified that he had been in the same line of business since 1919 and had dealt in the wholesale purchasing of well-known varieties of olives during that time; that he has witnessed the production of ripe olives; that the olives are picked at the time they are fully grown; that they are green in color, sometimes with a purple or reddish blush; that they are taken to the cannery and put in brine, which arrests maturation, then given a bath of lye, then oxidized and turned black by aeration. He identified defendant's illustrative exhibit C as California ripe olives, defendant's illustrative exhibit D as Spanish style California manzanilla green olives, and defendant's illustrative exhibit E as California-Sicilian style green olives. He testified that he had observed the processing of green olives, Spanish and Sicilian styles, in California; that the olives are picked when green in color, placed in vats and allowed to ferment for a certain period, then put in barrels and sent to the bottlers and packers; that California green ripe olives are produced like the other olives but are not subjected to a lye bath, nor are they aerated nor fermented; that they are picked when green, sometimes with a blush. He identified defendant's illustrative exhibit G as a Greek style olive

and stated that he had bought and sold Greek style, California ripe olives; that such olives are picked after they attain a heavy blush because it is easy to cover the blush in the fermentation; that they are placed in salt and brine.

Mr. Sozzi testified that the terms "ripe olives" and "green olives" are well known in the trade; that the word "green" is implied when referring to manzanillas, queens, and Spanish olives; that the definition in *Capolino & Bianco, Inc.* v. *United States, supra,* coincides with the general understanding of the term "ripe" in the trade and commerce of the United States with respect to olives; that in the production of olive oil, olives further matured than those packed as ripe olives for human consumption are used; that the word "ripe" when applied to olives does not have a different meaning in the trade and commerce of the United States than the generally understood common meaning as applied to fruits; that the terms "ripe olives in brine" and "green olives in brine" have a definite, uniform, and general meaning in the olive trade in the United States; that the term "ripe olives in brine" refers to olives preserved in brine in a hermetically sealed container, olives which have been processed and not fermented; that the term "green olives in brine" refers to fermented olives, usually green in color, but occasionally with brown spots.

On cross-examination the witness stated that he had not specialized in olives imported from Greece; that he is not familiar with the processes of picking, gathering, and packing Greek olives; that he had specialized in the California ripe olive industry; that the taste of the olive when taken from the tree is bitter; that bitterness is a characteristic of the green olive; that the maturity of an olive is determined by its size, texture, and the resiliency of the meat. He stated on re-direct examination that defendant's illustrative exhibit D contains mature olives, but that they are never bought and sold as ripe olives; that plaintiff's exhibit 2 would not be a good delivery in the olive trade in the United States in response to an order for green olives in brine, because the color is brown, too reddish to be a green olive such as is commercially accepted by the consumer and in the trade.

Plaintiff claims that the merchandise is properly dutiable as "olives in brine, green" as was held in *Capolino & Bianco, Inc.* v. *United States, supra,* and *A. G. Skourtsis, Inc.* v. *United States, supra.* The defendant does not dispute the correctness of the decision in the *Skourtsis* case on the record there presented, but claims that the additional testimony herein establishes that the merchandise consists of ripe olives in brine rather than green olives in brine according to the common and commercial understanding of said terms and pursuant to congressional intent, or that it is properly dutiable as olives, not specially provided for, under paragraph 744.

In the *Capolino* case, Gaeta olives from Italy were involved. There

was evidence that they were taken from the tree before they were matured, when they were green or light red, and that if permitted to remain on the tree they would have become black; that olives in the trade are sold by the name of the district in which they are grown. One witness testified that the only ripe olives known in the trade and commerce of the United States are the Italian black baked olives and the California ripe olives. Another witness stated that the word "ripe" in the wholesale trade in the United States is used only in connection with domestic California olives. The court held that this evidence failed to establish that the term "ripe olives" had a definite, uniform, and general meaning in the trade and commerce of the United States; that the commonly understood meaning of the word "ripe" when applied to fruits was that they had matured; that the olives involved were not mature and were therefore dutiable as olives in brine, green.

We do not believe the evidence in the instant case establishes that the terms "ripe olives" and "green olives" had a definite, uniform, and general meaning in the trade and commerce of the United States other than their common meaning. In fact, the witness Sozzi testified that the term "ripe" did not have a different meaning in the trade other than the common meaning as applied to fruits. Mr. Margiotta testified that the term "green olives" was never used without a qualification as to type, such as Spanish or Sicilian, and that the term "ripe olives" referred to California black olives. Mr. Brauss also testified that the term "ripe olives" meant California black olives; that the term "green" is rarely used, but that Spanish olives are referred to by the variety, such as "Queen Olives" or "Manzanita Olives." Mr. Sozzi testified that the term "ripe olives in brine" referred to olives which had been processed but not fermented and which were preserved in brine in a hermetically sealed container; that the term "green olives in brine" referred to fermented olives, usually green in color, but sometimes with brown spots.

The witnesses' belief that plaintiff's exhibit 2 would not be accepted as a good delivery for an order of green olives in the trade and commerce of the United States is not sufficient to prove a definite, general, and uniform meaning for the term. In the absence of proof as to the commercial meaning of the term "green olives," the statement of the witnesses that merchandise, such as plaintiff's exhibit 2, was excluded therefrom does not establish commercial designation. *United States v. Fung Chong Co.*, 34 C. C. P. A. 40, 44, C. A. D. 342.

Since commercial designation was not established, resort must be had to the common meaning of the terms. Ordinarily, the words "green" and "ripe" when used in connection with fruit mean "immature" and "mature," respectively.

Webster's New International Dictionary:

green. * * * 8. Not ripened or matured; immature; as, *green* fruit.

ripe. 1. Ready for reaping or gathering; having attained perfection; mature;— said of fruits, seeds, etc.; as, *ripe* grain.

Funk & Wagnalls New Standard Dictionary:

green. * * * 2. Not arrived at perfect or mature form or condition; immature; unripe; as, *green* fruit.

ripe. 1. Grown to maturity and fitness for use as food: said of fruit, grain, etc.; as, *ripe* apples; *ripe* wheat.

Paragraph 744 provides for olives in brine, green, and olives in brine, ripe. Several paragraphs of the tariff act provide for specified fruits, green or ripe (paragraphs 734, 735, 745, 748, 749, 1618). From the juxtaposition of the two words, it is clear that Congress intended to provide for the fruit both when ripe and when unripe. See *Causse Manufacturing Company* v. *United States*, 12 Treas. Dec. 573, T. D. 27751, where it was stated that the provision in paragraph 262 of the Tariff Act of 1897 referring to "Apples, peaches, quinces, cherries, plums, and pears, green or ripe" applied to the fruits, ripe or unripe, specifically mentioned therein. The fruit is considered "green," therefore, until it is ripe.

There is no reason to suppose that Congress intended any different result with regard to olives. The Summary of Tariff Information, 1929, contains the following statements:

### OLIVES IN BRINE, GREEN

**Description and uses.**— * * * For the preparation of green olives in brine the fruit is picked after it has reached full size, but before it has ripened sufficiently to become tender. Fruit of an entirely green or straw color are preferred. * * *

### OLIVES IN BRINE, RIPE

**Description and uses.**—Ripe olives are harvested just before full maturity to avoid bruising the fruit. In the United States the ripe olives are used for three purposes: (1) The production of canned ripe olives, (2) dried ripe olives, and (3) olive oil. In foreign countries the main use is for olive oil, but there is a considerable production of dried ripe olives in Greece and Italy. (See green olives, and olive oil.)

\* \* \* \* \* \* \*

**Imports.**—Imports of ripe olives are packed in brine and are prepared differently from the canned olives in California. The Greek process is customarily employed. The dead-ripe black olives are placed in a barrel with alternate layers of salt, and the barrel is sealed up when full. The barrel is placed on its side and rolled intermittently for about two months. The olives are then removed and repacked with brine in 50-gallon barrels.

It is clear from this that Congress understood that green olives were those picked before they had ripened and that ripe olives were those picked just before full maturity; that imported ripe olives were pre-

pared differently than those produced in California; that dead-ripe black olives were used in the Greek process.

The olives in the instant case were not dead-ripe black olives; they were picked before they had become tender, while the meat was still hard and firm, when they had become pinkish in color. One of the witnesses in the incorporated case stated that when the olive *begins* to mature, it becomes pinkish in color. In conformity with the statement in the Summary of Tariff Information, 1929, that green olives are picked after the fruit has reached full size, but before it has ripened sufficiently to become tender, the olives herein are green.

Moreover, according to the testimony, the maturity of the olive depends not only upon its color, but upon its size and texture and the resiliency of the meat. It was stated that the meat of the green olive is firm, its texture sound, and it contains very little oil, while the meat of the ripe olive is soft and oily and the skin wrinkled. The merchandise herein conforms to the first type rather than the latter.

On the record herein we hold that the merchandise is properly dutiable at 20 cents per gallon under the provisions of paragraph 744 of the Tariff Act of 1930 as "olives in brine, green." The protest is sustained and judgment will be rendered accordingly.