(C. D. 1534)

MOSCAHLADES BROS., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 17, 1953)

*Siegel, Mandell & Davidson (Sidney Mandell* of counsel) for the plaintiff.
*Charles J. Wagner,* Acting Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: The merchandise involved herein was described on the invoice as olives in brine, grown in Messenia, manufactured by Calogeropoulos & Sons of Kalamata. It was imported from Greece on or about January 14, 1950, and was entered as "black olives in brine." Duty was assessed by the collector at the rate of 5

cents per pound under the provision in paragraph 744 of the Tariff Act of 1930 for olives, not specially provided for. It is claimed that the merchandise is properly dutiable under said paragraph at 20 cents per gallon, as olives in brine, green; or at 30 cents per gallon, as olives in brine, ripe.

The pertinent provisions of the tariff act are as follows:

PAR. 744. Olives: In brine, green, 20 cents per gallon; in brine, ripe, 30 cents per gallon; in brine, pitted or stuffed, 30 cents per gallon; dried ripe, 5 cents per pound; not specially provided for, 5 cents per pound.

At the trial, the following statement of facts was agreed to:

The olives involved are imported from Greece, are so-called Greek type known as Kalamata—Calamata or Kalamata—which are cut or slashed and red to reddish brown to dark brown in color. They are picked before full maturity, and are reddish or pinkish in color, as were the olives involved in the case of Union Olive Oil Company, Inc. v. United States, reported in C. A. D. 442, Protest Number 138345–K. They are then cut or slashed in one, two or three places, and placed in vats of a brine solution for several weeks' duration, after which they are placed in barrels, filled with brine, ready for shipment. The cutting or slashing of the olives accelerates the processing of the olives.

An official sample of the merchandise was introduced into evidence and marked plaintiff's exhibit 2–A. It consists of reddish-brown olives which have been slashed and placed in a liquid.

The record in the case of United States v. Union Olive Oil Co., Inc., 38 C. C. P. A. (Customs) 73, C. A. D. 442, was incorporated herein. That case included the record in A. G. Skourtsis, Inc. v. United States, 69 Treas. Dec. 522, T. D. 48218. The evidence in the latter case showed that the olives therein were picked while still immature just as they began to turn from a green to a pinkish color. After picking, they were submerged in a salt solution for a year or two, after which they were put into barrels in brine and shipped to this country. The court held that the common meaning of the word "ripe" when applied to fruits is "mature" and that since the olives had been picked while immature, they were properly dutiable under paragraph 744 at 20 cents per gallon as olives in brine, green.

In United States v. Union Olive Oil Co., Inc., supra, the Government introduced testimony to prove commercial designation or to aid the court in determining the common meaning of the terms "ripe olives" and "green olives." The court sustained the collector's classification of the merchandise as "olives in brine, ripe," stating (pp. 78–79):

It appears to us from an examination of the before-mentioned Summaries of Tariff Information, that Congress was aware, at the time of the passage of the present tariff act, that in the olive commerce of the United States, the Spanish style olives, "queens" and "Manzanillos" were known to be olives green in color and that the ripe olives were those corresponding to the California black-ripe olive.

* * *

Our tariff acts are written in the language of the trade and commerce of the United States. Therefore, in drafting the olive paragraph, Congress intended that the two kinds of olives in brine were to be such as were known in the trade. The testimony of the witnesses, appearing on behalf of the Government, that the definite, uniform, and general meaning to be attached to green olives in brine, is that they are green in color and that ripe olives in brine are those olives known as the California ripe olive. Such testimony, in our opinion, completes the proof that at the time of and before the effective date of the Tariff Act of 1930, up to and including the present time, the involved merchandise cannot, for tariff purposes, be considered as being "olives in brine, green." We also think that the uncontradicted testimony that the involved merchandise could not be substituted in an order for green olives, is consistent with the intent of Congress and, of course, is entitled to some weight.

The evidence in the incorporated case is summarized in the decision of the Court of Customs and Patent Appeals, *supra*, and in the decision of the lower court in 23 Cust. Ct. 78, C. D. 1195, *sub nom*, *Union Olive Oil Co., Inc.* v. *United States*, and will not be repeated here. In the instant case, Adolphus Brook, vice president and managing director of the plaintiff corporation, testified that he had handled olives, including Greek olives, for over 30 years. He described the merchandise herein as green olives in brine, Kalamata type. He said that these olives are longer than those in the *Skourtsis* case and have been slashed in one to three places. They are picked when very hard, very green, and are slashed so that they may absorb the brine more quickly. After importation, they are either processed further with olive oil and vinegar or are sold in the condition as imported. In the latter case, they are either prepared with olive oil, vinegar, and spices by consumers or are eaten without further processing. They absorb the seasoning much better than whole olives do.

The witness stated that he considered these olives to be "green," meaning immature. They are ordered as Kalamata olives, and it is understood that they will be dark colored and slashed. He considered an olive that is fully mature to be a black olive, that is, an olive with a wrinkled skin and softish meat, but where the olive-oil sack has not completely filled, because then it would be overripe. Prior to 1927, he imported such olives, which were called ripe olives. He has not imported them since, because they deteriorate more rapidly than the instant merchandise, and the trade demands a smoother skinned olive. He was shown defendant's illustrative exhibit H from the incorporated case and stated that it was a cracked green olive, Sicilian style or Greek style. Such an olive, he said, is picked when completely green and never changes its color. It is green in color as well as green in character. In maturity, in his judgment, it was a little more advanced than the Kalamata olive, but it is called a green olive because it is green in color. It is picked

when green in color, cracked with a mallet, and bleached in brine to keep it green. It is bought and sold as a cracked olive or under the Greek term "tsakistes," which means cracked. The purchaser knows he is going to get green-colored olives that are cracked.

The witness was shown plaintiff's exhibit 2, the official sample in the incorporated case, and stated that it consisted of Salona type olives, which are dark in color. He said they are not sold commercially as green olives by the color but are sold as green olives in the sense that they are immature. They are ordered as Greek olives or black olives. Merchandise like defendant's illustrative exhibit H would not be a proper fulfillment of an order for them.

Mr. Brook testified that California ripe olives are produced differently from the Greek type; they are oxidized at a much later stage and are put into lye baths.

George E. Athans, importer and exporter of food products, testified that he had been a processor and packer in Greece from 1930 to 1940 and in California from 1941 to 1947. He stated that olives like those in plaintiff's exhibit 2-A are round, solid olives, which, after they are sliced, have to be put in brine for a certain period to make the color because the customers prefer them to be reddish in color. They are green olives, he said, and have to be more green than any other olives except green-colored ones, so that they may be sliced without getting soft and mushy. When they are picked, they are reddish to brown in color. In the opinion of the witness, they are still green olives. However, they are sold as Kalamata olives, not as green olives, while those like defendant's illustrative exhibit H are sold as Greek cracked olives. It is always understood that the latter are greenish in color. The witness stated that he had also imported Greek uncracked olives which were green in color.

It is apparent from the testimony in this case and in the incorporated case that olives of several different types are bought and sold commercially in the United States. There are those which are green in color and immature, such as Spanish and Sicilian green olives, and Greek green cracked or uncracked olives; those which are green in color and mature, such as California green ripe olives; those which are reddish or brown in color and immature, such as those involved herein and those in the incorporated case; and those which are black in color and mature, such as California ripe black olives, and the black olives imported from Greece prior to 1927.

The Tariff Acts of 1922 and 1930 provide specifically for "olives in brine, green" and "olives in brine, ripe." According to *United States* v. *Union Olive Oil Co., Inc., supra,* the term "green olives" as used in the trade and commerce of the United States means green-colored olives. Merchandise similar to that involved herein, except that the olives were not slashed, was held not classifiable as "olives in brine,

green." Plaintiff claims, however, that the decision in that case is erroneous on the ground that the common meaning of the terms "green" and "ripe" when applied to fruits is "immature" and "mature," respectively, and that the record does not justify a finding of a different commercial meaning for the term "green olives." That was the position taken by this court in the *Union Olive Oil Co.* case (23 Cust. Ct. 78, C. D. 1195), but our conclusion was not sustained by the Court of Customs and Patent Appeals. After further study of the question, we adhere to the decision of our appellate court for the reasons stated therein and on the following grounds.

It is common knowledge that green-colored fruit is often immature fruit, as bananas, oranges, lemons, etc., so that the terms "green" and "immature" have the same significance. In the case of olives, also, the term "green olives" ordinarily means green-colored, immature olives, and the term "ripe olives" means black-colored, mature olives. Webster's New International Dictionary; Funk & Wagnalls New Standard Dictionary; The New International Encyclopaedia. These are the two types that Congress had in mind in enacting the tariff statutes.

The Summary of Tariff Information, 1921 (pp. 730-732), refers to ripe olives processed in California, green olives imported from Spain, salt-cured olives, and black olives processed in the Mediterranean countries. In hearings before congressional committees, the types referred to were the California canned ripe olive, the Spanish green olive, and the salt-cured ripe black olive. (Hearings on General Tariff Revision before the Committee on Ways and Means, House of Representatives, Sixty-sixth Congress, 1920-1921, Part III, pp. 1910-1925, and Hearings before the Committee on Finance, United States Senate, on the Proposed Tariff Act of 1921 (H. R. 7456), Vol. IV, pp. 3094-3098.) It was stated that the Spanish green olive was a different product from the California ripe olive and that two distinct forms of ripe olives are produced in California, the ripe olive in solution and the salt-cured ripe olive. Both are tree-ripened fruits, while Spanish green olives are gathered at a stage when they are clearly immature.

The Summary of Tariff Information, 1929 (pp. 1276-1281) states that in preparing green olives in brine, the fruit is picked after it has reached full size but before it has ripened sufficiently to become tender and that fruit of an entirely green or straw color is preferred. After picking, it is sorted to remove ripe, injured, and other undesirable olives. The green olives are treated with a solution of lye to remove the bitter taste, are thoroughly washed, and then placed in brine. They are then allowed to stand in the sun to ferment, which process takes a month or longer. Spain is the leading producer of such olives.

In connection with ripe olives, the summary states that the California process is different from the Greek process used abroad. In

the former, ripe olives are placed in a lye solution, allowed to aerate to develop the deep brown color, washed, graded, and packed in brine in cans or bottles. The latter process employs dead-ripe black olives which are packed in alternate layers of salt for 2 months and then removed and repacked with brine. Dried ripe olives are produced by a similar process, but the olives are removed from the barrel after brining and allowed to drain and dry.

From this it appears that Congress had information about, and provided for, Spanish green olives (olives in brine, green), ripe black olives in brine (olives in brine, ripe), and ripe black olives, dried (dried ripe olives). Separate provisions were also made for pitted or stuffed olives in brine and for olives, not specially provided for.

The merchandise which Congress contemplated would fall within the provision for "olives in brine, green" was Spanish green olives, or like products, which are always green in color. That conforms to the common and commercial understanding of the term "green olives." Since the merchandise herein is not of this type, it is not classifiable under that provision.

Neither is it "olives in brine, ripe." Commonly, a ripe olive is one which is black in color and mature. Commercially in the United States, as was held in *United States* v. *Union Olive Oil Co., Inc.,* *supra,* the term refers to California black ripe olives. However, since the tariff act contains a provision for ripe olives, it is obvious that Congress intended it to cover merchandise other than California black ripe olives, because no other country makes a similar product. According to the information before Congress, imported ripe olives were customarily produced by the Greek process in which dead-ripe black olives are packed in salt and then placed in brine. The merchandise herein is not of this type. The olives employed are not dead ripe nor mature nor are they black in color, and they are processed in a different manner. They are not "olives in brine, ripe."

Since the merchandise herein is neither "olives in brine, green" nor "olives in brine, ripe," it was properly classified as "olives, not specially provided for."

Another reason for adopting such classification is that the olives involved herein have been slashed in one to three places. According to the agreed statement of facts and the testimony of the witnesses, the slashing accelerates the processing of the olives in that they then absorb the brine more quickly. It was also stated that when such olives are later prepared, either commercially or by the consumer, with olive oil, vinegar, or spices, they absorb the seasoning more readily than whole olives. We conclude that the slashing of the olives advanced them in condition for their intended use and that they have been "prepared" within the meaning of tariff statutes. *United States* v. *Conkey & Co.,* 12 Ct. Cust. Appls. 552, T. D. 40783;

*Stone & Downer Co.* v. *United States*, 17 C. C. P. A. (Customs) 34, T. D. 43323. They are more than olives in brine (whether green or ripe) and are not classifiable as such. See *Amerman & Patterson (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 117, T. D. 40047, where it was held that pineapples, which had been peeled, cut into rectangular pieces, subjected to sulphur-dioxide fumes, and then immersed in brine, were classifiable as fruits, prepared, rather than as fruits in brine. The court said (p. 120):

> The fact that the pineapple now in question was imported in brine made it none the less prepared edible fruit within the sense of paragraph 217, and that paragraph should control the assessment. The free-list provision for fruits in brine is not applicable to fruits which prior to importation have been processed so as to advance them to the status of "prepared fruits," even though afterwards they should be imported in brine.

> \*　　\*　　\*　　\*　　\*　　\*　　\*

> \* \* \* It is conceded that the importations were pineapples in brine, but they were also something more than that, for they had been so processed as to be edible fruit, prepared, and the brine did not remove them from that classification. After importation, as before, the merchandise was prepared pineapple, and retained its dutiable status as such.

It has also been held that olives which have been broken or split in a manufacturing process and imported in brine are not dutiable as "olives in brine, green." *Costogue et al.* v. *United States*, 15 Ct. Cust. Appls. 55, T. D. 42152; *Mawer-Gulden-Annis (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 270, T. D. 43689. In the former case, the court said, referring to paragraph 744 of the Tariff Act of 1922 (pp. 56–57):

> \* \* \* A consideration of the language of this paragraph leads to the conclusion that the Congress intended to enumerate three classes of olives, green olives, ripe olives, and pitted or stuffed olives, and that *the first two designations referred to whole olives.* [Italics supplied.]

Since the Tariff Act of 1930 continued these designations, it must be presumed the Congress reenacted them with knowledge of and agreement with the construction which had been placed upon them. *United States* v. *The Singer Manufacturing Company*, 37 C. C. P. A. (Customs) 104, 109, C. A. D. 427. This view is reinforced by the fact that an additional provision was included to cover olives, not specially provided for, under which merchandise which was still olives, but not necessarily whole olives, might be classified. Since the merchandise herein consists of slashed rather than whole olives, it properly falls within that provision.

For all of the foregoing reasons, we hold that the merchandise herein was properly classified by the collector at 5 cents per pound under paragraph 744 of the Tariff Act of 1930, as olives, not specially provided for.

The protest is overruled and judgment will be rendered accordingly.