MOSCAHLADES BROS., INC. *v.* UNITED STATES (No. 4790)[1]

---

[1] C. A. D. 575.

United States Court of Customs and Patent Appeals, November 9, 1954

*Siegel, Mandell, & Davidson (Sidney Mandell* of counsel) for appellant.

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon* and *William J. Vitale*, special attorneys, of counsel), for the United States.

[Oral argument February 3, 1954, by Mr. Mandell and Mr. Vitale; reargued October 15, 1954, by Mr. Mandel and Mr. FitzGibbon ]

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and COLE, Associate Judges [original argument before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges]

COLE, Judge, delivered the opinion of the court:

Appellant imported a quantity of olives grown and processed in the Kalamata region of Greece and sought entry of such merchandise as either green or ripe olives in brine under the provisions of paragraph 744 of the Tariff Act of 1930 [19 U. S. C. sec. 1001, par. 744]. The Collector of Customs considered the importation to be dutiable as olives, not specially provided for, in accordance with the provisions of the same paragraph which, in its entirety, reads as follows:

> Par. 744. Olives: In brine, green, 20 cents per gallon; in brine, ripe, 30 cents per gallon; in brine, pitted or stuffed, 30 cents per gallon; dried ripe, 5 cents per pound; not specially provided for, 5 cents per pound.

In proceedings before the United States Customs Court, Third Division, it was agreed between counsel for the respective parties that the issue to be decided, though presented in slightly different form, was similar to that previously decided in *United States* v. *Union Olive Oil Co., Inc.*, 38 C. C. P. A. (Customs) 73, C. A. D. 442, wherein this court construed the tariff provisions applying to green and ripe olives in brine, and the record in that litigation was incorporated by consent in the instant controversy. Following its review of the incorporated record, which included as part thereof the proceedings in *A. G. Skourtsis*

v. *United States*, 69 Treas. Dec. 522, T. D. 48218, and after considering the newly adduced evidence offered on behalf of the importer herein, the Customs Court, for reasons discussed *infra*, sustained the collector's classification. *Moscahlades Bros., Inc.* v. *United States*, 30 Cust. Ct. 289, C. D. 1534.

It appears that the Kalamata type of Greek olive herein involved is picked before full maturity, the flesh then being quite hard and firm, the oil content low, and the color from reddish to brown or pinkish. The olive is slashed or cut in from one to three places and put in a brine solution for several weeks. Thereafter, the olives are placed in barrels filled with brine, ready for shipment, and, as imported, the olives appear to be red to reddish brown to dark brown in color. The slashing of the characteristically tough Kalamata olive enables quick absorption of the brine, thus expediting salability by more rapid removal of the bitterness of such olive. Importer's Exhibit 2–A, an official sample of the involved olives immersed in a liquid, is before us for inspection. The slashing and subsequent treatment of the olives do not, in our opinion, advance them in condition or characterize them as being other than what is commonly regarded as a whole olive. They are generally sold in the condition in which imported.

As aforesaid, the appellant claims that the imported olives should have been classified either as green or ripe olives in brine as provided in paragraph 744, *supra*. In considering appellant's first contention, i. e., that the instant olives are green, in brine, within the meaning and contemplation of the said paragraph, it is necessary to refer in some detail to previous adjudications of this court, and the United States Customs Court, with respect to the tariff provision for olives, particularly our holding in the incorporated case, *United States* v. *Union Olive Oil Co., Inc.*, *supra*, hereinafter referred to as C. A. D. 442.

The olives that were before us on appeal in C. A. D. 442 were, as indicated, substantially identical to those involved in *A. G. Skourtsis* v. *United States*, *supra*, and these olives were harvested before full maturity and were generally of a reddish or pinkish color, quite hard, of smooth skin, sound texture, bitter taste, and low in oil content. The olives were covered with a salt solution for a period of from one to two years and thereafter shipped in barrels filled with brine. They did not mature during the course of the brining or pickling process.

It is readily apparent, therefore, that the immature Kalamata olives involved herein are similar to those involved in the *Skourtsis* case and C. A. D. 442, *supra*, except that the instant olives are slashed and are placed in a brine solution for only a relatively short period of time prior to being shipped in barrels filled with brine.

In answering the importer's contention in C. A. D. 442, i. e., that the olives were dutiable as being green, in brine, we stated:

> The evidence appearing on behalf of the Government is to the effect that in the trade and commerce of the United States, "green" olives

are of the so-called Spanish type, the larger of which are known as "queens" and the smaller "Manzanilla," as well as Sicilian olives. All of those olives are green in color, firm of texture and not so bitter as the raw olives. * * * The record on behalf of the Government further discloses that olives such as those here involved would not be accepted in trade as green olives. The color of the involved olives, as appears from the exhibits, is light brown.

We also considered the common meaning of the term in question, noting that "The primary meaning of the word 'green' as it appears in the Funk & Wagnall's dictionary, is 'of the color of herbage and growing plants; having the spectrum color between blue and yellow; verdant; as a green meadow; a green dress.'" Consulting the Summary of Tariff Information, 1929, Vol. 1, page 1276, we set forth the following definition with respect to the preparation of green olives in brine:

* * * For the preparation of green olives in brine the fruit is picked after it has reached full size, but before it has ripened sufficiently to become tender. Fruit of an entirely green or straw color are preferred. * * * Only two kinds of olives [green] are generally known in the trade, Queens and Manzanillos. * * *

The majority of this court (two judges dissenting) was thus satisfied in C. A. D. 442, *supra*, that the testimony of the Government's witnesses established that there was a definite, uniform, and general meaning attaching to the term, "green olives in brine," and that such definition, as previously set forth, was that known and understood in the olive trade and commerce of the United States at the time of and prior to the passage of the Tariff Act of 1930. Additionally, we indicated that such meaning was representative of the common signification of the term in question. We were also of the opinion that the Summaries of Tariff Information published by the United States Tariff Commission supported the view that the involved olives were not classifiable as green olives merely because they were picked before full maturity. In effect, therefore, we held that green olives were those that were immature and green in color such as the Spanish or Sicilian olives.

With respect to what constituted a ripe olive within the meaning of paragraph 744, *supra*, we stated:

* * * The record also is replete with testimony that in the trade and commerce of the United States, the California black-ripe olives are considered to be "ripe" olives. It appears that such meaning is definite, uniform, and general. * * *

*     *     *     *     *     *     *

The California black-ripe olives are picked after they have grown to full size and their color is either green or just about to change. After picking, they are kept in a brine solution for a time and then subjected to a lye bath. Their color is changed by oxidization to a substantially uniform bluish or brownish black. Thereafter they are packed in brine for commerce.

We concluded from the above that a ripe olive was one corresponding to the California black-ripe olive.

Referring now to the trial of the instant case before the Customs Court, two witnesses testified on behalf of the importer. Their testimony was to the effect that the involved olives, while sold commercially as Kalamata olives and not as green olives, are regarded by the olive trade as green olives because they are not mature. The trial court noted that similar testimony was adduced at the trial of the *Skourtsis* case, *supra*. The two witnesses appearing for the importer in the present case were among those witnesses testifying for the importer in the *Skourtsis* case. No witnesses appeared for the Government in the trial of the instant case. In the incorporated case, however, five witnesses testified on behalf of the Government to the effect that olives, not green in color, were not considered by the olive trade as being green olives. On the basis of the testimony and evidence before it, and after referring to the interpretation given in the Summaries of Tariff Information published in 1921 and 1929, the lower court stated that it adhered to our decision in C. A. D. 442, *supra*, for the reasons given therein, and additionally stated as follows:

> It is apparent from the testimony in this case and in the incorporated case that olives of several different types are bought and sold commercially in the United States. There are those which are green in color and immature, such as Spanish and Sicilian green olives, and Greek green cracked or uncracked olives; those which are green in color and mature, such as California green ripe olives; those which are reddish or brown in color and immature, such as those involved herein and those in the incorporated case; and those which are black in color and mature, such as California ripe black olives, * * *
>
> *     *     *     *     *     *     *
>
> * * * it appears [from the court's interpretation of the aforesaid Summaries of Tariff Information] that Congress had information about, and provided for, Spanish green olives (olives in brine, green), ripe black olives in brine (olives in brine, ripe), and ripe black olives, dried (dried ripe olives). Separate provisions were also made for pitted or stuffed olives in brine and for olives, not specially provided for.
>
> The merchandise which Congress contemplated would fall within the provision for "olives in brine, green" was Spanish green olives, or like products, which are always green in color. That conforms to the common and commercial understanding of term "green olives" * * *

It is entirely clear that the language of the statute will be given its common meaning unless it is established by satisfactory proof that there is a different commercial meaning in existence which is definite, uniform, and general throughout the trade. We are now of the opinion that the record presently before us, incorporating as it does the record in C. A. D. 442, *supra*, which, as we have said, incorporated the proceedings in the *Skourtsis* case, *supra*, does not establish a commercial understanding of the term in question differing from its common meaning. As we view the record, the testimony offered on behalf of

the respective parties is conflicting and, we think, counterbalancing in effect. It appears to us that the testimony of the Government's witnesses tending to establish that, in the trade, a green olive is one that is green in color, such as Spanish or Sicilian olives of specified type, is sufficiently off-set by the equally credible testimony of the importer's witnesses who have asserted that, in the trade, a green olive signifies an olive, not necessarily green in color, which has been picked before full maturity, i. e., a green olive. It is not enough to show that the involved olives might not constitute good delivery for an order of "green olives" since it appears that the Spanish or Sicilian type of green colored olives are not themselves generally ordered as green olives but instead are ordered by their particular trade designation such as, for example, Queens or Manzanillos.

We believe that the common meaning of the term "green olives" should be applied herein and, in ascertaining that meaning in the light of the Congressional intention, it is necessary and proper to consider the association and relationship of such term with other provisions for olives found in paragraph 744, *supra*. In this respect, when the word "green" is contrasted with the word "ripe," i. e., "green olives" and "ripe olives," it is at once apparent and within our judicial knowledge that a green olive could well mean an olive in the state or condition of being unripe or immature. We have so defined the term "green" on several occasions in construing tariff provisions pertaining to fruits and vegetables, *United States* v. *A. Goldmark & Sons Corporation*, 16 Ct. Cust. Appls. 562, T. D. 43295 and *Lekas & Drivas* v. *United States*, 19 C. C. P. A. (Customs) 389, T. D. 45523, and we note that the word "green" is used in juxtaposition to the word "ripe" a number of times in Schedule 7 of the Tariff Act of 1930 relating to Agricultural Products and Provisions (for example, the provision for "Apples, green or ripe" appearing in paragraph 734). While such is hardly conclusive in determining the intention of Congress in providing for green or ripe olives in the particular paragraph under consideration, it is clearly indicative of a meaning which Congress had in mind when enacting somewhat similar provisions in the Tariff Act of 1930.

As stated by the appellant, in its brief, it is an "obvious fact that there is never a uniformity of color of fruits in their process of growth, and that there are many fruits that are green in color which are fully mature and are ripe, and also that many fruits and vegetables which are not 'green' in color are immature, inedible but would still fall within the common meaning of the term 'green.'" Such reasoning by the appellant is, we feel, quite persuasive and tends to support its view that the involved olives are green within the intended meaning of the paragraph in question.

It will be observed that in the hereinbefore quoted description of green olives in brine found in the Summary of Tariff Information,

1929, *supra*, upon which the Government so largely relies, it is said that "For the preparation of green olives in brine the fruit is picked after it has reached full size, but before it has ripened sufficiently to become tender. Fruit of an entirely green or straw color are preferred." The involved Kalamata olives are picked after they have reached full size, but before they have ripened sufficiently to become tender, and resemble, in our opinion, olives that appear to be the color of straw. Certainly, an olive that is straw colored is not an olive that is entirely green.

A brief review of tariff act provisions for olives in force prior to enactment of the Tariff Act of 1930 reveals as follows:

> 1909 Par. 275. * * * olives, in bottles, jars, kegs, tins, or other packages, containing less than five gallons each, twenty-five cents per gallon; otherwise, fifteen cents per gallon.
> 1913 Par. 218. * * * olives, 15 cents per gallon.
> 1921 Par. 28. Olives, in solutions, 25 cents per gallon; olives, not in solutions, 3 cents per pound.
> 1922 Par. 744. Olives in brine, green, 20 cents per gallon; ripe, 20 cents per gallon; pitted or stuffed, 30 cents per gallon; dried ripe olives, 4 cents per pound.

It would appear from the foregoing that olives were provided for without qualification as to style or type in the acts of 1909 and 1913. In the act of 1921, the provision for olives is again seemingly all-embracive and we note that olives not in solutions are dutiable on the basis of their per pound weight while olives in solutions, such as brine, are dutiable on the basis of a liquid measure, i. e., the gallon. In the Act of 1922, a provision for olives in brine of specified type is made, the rates of duty thereon again being based on the gallon measurement; the only other type of olive included in the provisions of that Act, dried ripe olives, are made dutiable on the basis of their weight per pound. In the Act of 1930, for the first time, provision was made for olives not specially provided for, duty to be assessed thereon at a per pound weight measurement, and olives in brine, either green, ripe, pitted or stuffed, are dutiable on the basis of the gallon unit of measurement.

From our study of the foregoing tariff provisions for olives, it would appear quite logical that Congress, in enacting the Tariff Act of 1930, did not intend to include olives imported in brine in the provision for olives not specially provided for, but intended that all such whole olives that might be so imported in brine would fall into one of three classifications, i. e., green, ripe, pitted or stuffed, duty to be assessed by the gallonage imported. In other words, we do not think that Congress intended that olives imported in brine be assessed with duty by the pound in accordance with that portion of paragraph 744, *supra*, for olives, not specially provided for, but intended to include all whole olives imported in brine within one of the specific

designated classifications, i. e., green, ripe, pitted or stuffed, and assess duty on such importation on a per gallon basis. It is clearly obvious to us, therefore, that any attempt to apply an *eo nomine* designation under paragraph 744, *supra*, to whole olives in brine could not under any conceivable approach find application under the last category of not specially provided for where there is no reference to brine whatsoever.

In concluding that the involved olives are properly dutiable as green olives in brine at 20 cents per gallon, we had, in addition to the respective briefs, the benefit of oral argument on behalf of the litigants on two occasions, the latter of which, October 15, 1954, followed the granting of the Government's petition for a rehearing of the issues decided in our opinion of June 30, 1954. While we reaffirm the view we expressed in the earlier opinion,[1] the substance of which remains unchanged herein, we think it is well to point out that Government counsel, during oral reargument before the court on October 15, 1954, conceded that the normal common meaning to be assigned to the term "green olives," as used in the olive paragraph, is that such olives are not mature. That concession, tempered with the further view that Congress did not intend such common meaning to be applied, was not made in the original argument of the Government, and although it does not violate the Government's primary contention that the record supports the position that green olives are commercially known as olives that are green in color, it does remove from possible dispute the view that green olives are commonly, as well as commercially, known to be olives green in color.

For the reasons hereinbefore stated, the judgment of the United States Customs Court is *reversed.*

GARRETT, C. J., was present at the hearing of this case but did not participate in the decision.

JOHNSON, Judge, concurring in part and dissenting in part.

Appellant has contended here that these olives should be classified as "olives in brine, green" and also that they should be classified as "olives in brine, ripe." However, the Customs Court has not ruled as to which of these classifications is applicable to the involved importation. Since this question has not been decided by the lower court, I do not feel that it is within our province to decide that question for them. Therefore, while I agree with the majority that these olives are not properly classified as "olives not specially provided for" and that they are "olives in brine," I do not agree with the majority in that portion of their opinion deciding which of these classifications should prevail.

---

[1] In conformity with the practice of this court, the decision of June 30, 1954 was withheld from formal publication pending Government's right to petition for reconsideration. The foregoing opinion is to be substituted therefor.